## BIG DIAMOND MILLS CO. v. UNITED STATES.

No. 9038.

Circuit Court of Appeals, Eighth Circuit.

July 31, 1931.

722

Leland W. Scott, of Minneapolis, Minn. (Junell, Oakley, Driscoll & Fletcher, of Minneapolis, Minn., on the brief), for appellant.

Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and M. W. Goldsworthy, Sp. Asst. to U. S. Atty., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for the United States.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment dismissing on the merits an action brought by the appellant against the United States to recover $3,356.88, with interest from January 28, 1925, representing an amount paid by appellant to the collector of internal revenue as interest on unpaid income and excess profits taxes for the year 1917, which were erroneously assessed against appellant.

The case was tried to the court without a jury (a jury having been duly waived) on an agreed statement of facts, which included the following: March 27, 1918, the appellant company (hereafter called the company) filed its income and excess profits tax return for 1917, disclosing a tax liability of $74,-260.02. June 25, 1918, it filed an amended return, disclosing a tax liability of $64,292.-74; and on the same date it filed a claim for the abatement of the difference, $9967.28. On June 26, 1918, it paid the tax disclosed on the amended return. On or about January 23, 1923, the company signed a waiver of the statute of limitations. After an examination and audit, the Commissioner, on March 5, 1923, notified the company that the total income and excess profits taxes assessed on the original income and excess profits tax return were due and payable. On May 24, 1923, the Commissioner rejected the claim for abatement, and, on October 26, 1923, the collector of internal revenue made demand for the payment of the balance of $9,967.28, together with interest thereon at the rate of 1 per cent. per month from July 6, 1918, to November 23, 1921 (the date when the Revenue Act of 1921 was passed), amounting to $4,043.39; and interest at the rate of one-half of 1 per cent. per month from Novem-

ber 23, 1921, to May 22, 1923, in the amount of $897.06, making a grand total of $14,907.-73. Accompanying this demand was a letter from the collector suggesting that the interest might be made the subject of a compromise offer, inclosing a form for the making of such offer, and stating that the Commissioner had, in similar cases, considered an offer equal to 6 per cent. per annum. The letter is as follows:

"Treasury Department
"Internal Revenue Service
"St. Paul, Minn., Oct. 26, 1923.
"Big Diamond Flour Mills Co. 922 Exchange Bldg., Minneapolis, Minn.

"In explanation of the enclosed notice and demand for tax, you are advised that this represents the unpaid balance of an additional assessment of Income Tax for the year 1917, and is the result of an audit by the Commissioner of Internal Revenue in connection with a claim for abatement filed by you on 7/3/18. Interest is computed in accordance with section 14 (a) of the Revenue Act of 1916, which remains in force under section 1400 (b) of the Revenue Act of 1918 until that act was superseded by the present law on November 23, 1921.

"However, you are advised that your liability to this interest at 1% per month may at your option be made the subject of an offer in compromise. The Commissioner of Internal Revenue has in similar cases considered an offer equal to interest at the rate of 6% per annum on the balance of tax from the due date to date of payment. The due date in your case was 7/16/18.

"Should you desire to take advantage of your compromise privilege as above explained, you should execute the enclosed Forms 656 and forward the same to this office in duplicate accompanied by a certified check or post office money order in the amount of your offer."

November 1, 1923, the company paid the balance of the taxes demanded; and submitted a compromise offer as to the interest, which, by inadvertence in computation, was too small; and it then submitted an additional compromise offer for the balance, and these compromise offers were accompanied by remittances of the amounts offered to the Commissioner. The total interest thus paid by the company was $3,190. With the letters transmitting this interest was sent Treas-

ury Form 656, which is set out in the margin, together with the first letter of transmittal from the collector to the Commissioner.[1]

January 17, 1924, Commander Mill Company filed a claim for refund of $200,000 for the year 1917 for itself and affiliated compa-

---

[1] "Treasury Department
Internal Revenue Service
Form 656 Revised November, 1922

Collector of Internal Revenue
District of Minnesota
Oct. 31, 1923
St. Paul Main Office

Offer in Compromise
(This side to be filled in by taxpayer)

Collector of Internal Revenue,
St. Paul, Minnesota
(Address)

Minneapolis, Minnesota
(City and State)
October 30, 1923

The following offer in compromise is submitted to you for transmittal to the Commissioner of Internal Revenue.

Big Diamond Mills Company,
(Signature of taxpayer)

---

Commissioner of Internal Revenue,
Washington, D. C.

Charges of violation of law have been made against the undersigned as follows:
Income and Profits Tax liability for the year 1917 understated
Date and place of alleged violation Minneapolis, Minnesota, 1918
The alleged violation is due to the following cause or causes:

Paid U. S. Int. Rev.
Coll. St. Paul

Error in computation of tax liability

(Nov.
1050    1
1923)

Having been advised of the privilege of submitting an offer in compromise of the liability incurred, the sum of........................is hereby tendered voluntarily with request that it be accepted as a compromise offer and that release be granted the undersigned from all liability resulting from the violation specified, excepting

It is understood that this offer does not afford relief from the liability incurred unless and until it is actually accepted, and that the offer can not be considered as having been accepted until the date on which formal notice of acceptance thereof is signed by the Commissioner."

---

"Collector's Recommendation
Commissioner of Internal Revenue,
Washington, D. C.

Herewith is an offer made by Big Diamond Mills Co., of Minneapolis, Minn.
(Insert complete address)
on 10/30/23, in compromise of.............................liability incurred because of Compromise interest accrued on rejected claim at the rate of 1% per month on $9,967.28 from 7/6/18 to 11/23/21 $4,043.39 and at 6% per year from 11/23/21 to 5/22/23 $897.06.
in violation of...........................................................
(Sections, Acts, etc. of laws.)
The period of liability is............................Return was filed on Form No.............................
Received in
Aug. 13, 1928
General Counsel's Office
Bureau of Internal Revenue

This case is (not) in suit.                        for 1917 on.............................
(Period)                        (Date)

The amounts of tax, penalties, etc. heretofore assessed and paid follow:

| Tax | Amount assessed | | Amount paid | Assessment made on Line Page Month & Yr. |
|---|---|---|---|---|
| Tax | 74,260.02 | 6/26/18 | 64,292.74 | Apr. 1918, p. 468 |
| | | 11/ 1/23 | 9,967.28 | Cons. List. 12-4 |
| Additional Tax | | | | |
| Per cent penalty | | | | |
| Per cent penalty | | | | |
| Interest | | | | |
| | | Compromise offer | | 2917.09 |
| | | Costs incurred if any, | | |
| | | Amount paid | | |
| Total | 74,260.02 | | 74,260.02 | 2917.09 |

This compromise item appears on page...........................line ...........................
(or Serial No. N-540004) of Income Tax list for Nov. 1923 and the amount actually paid ($2917.09)
(Month and year)
is included in certificate of deposit No...........................bearing date of...........................
I recommend that the offer be accepted for the following reasons:
Date signed.....................................192

Collector Minnesota District"

nies, which included the appellant company. The basis for this claim was the contention that the claimants were entitled to have their excess profits tax liability for the year 1917 determined under the special assessment provisions of section 210 of the Revenue Act of 1917.

Subsequently, the company received a letter dated January 19, 1925, reading as follows:

"Jan. 19, 1925.

"Big Diamond Mills Company, Minneapolis, Minnesota.

"Sirs: You are advised that under date of January 3, 1925, the Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, has accepted the amount of $3190.00, tendered as an offer in compromise of liability to the interest which accrued on a rejected claim for abatement of a portion of the tax assessed on your return of the annual income for the year 1917."

In a letter from the office of the Commissioner dated January 28, 1925, the company was advised that an overassessment of $9,902.24 had been made for 1917, and on June 22, 1925, this amount was refunded, together with $813.33 interest, covering a period from November 1, 1923, to March 14, 1925. The amounts so refunded did not include the amount of interest here in controversy. On June 27, 1925, the company filed a claim for a refund of the interest which had been paid under the compromise offer. May 5, 1927, this claim was rejected in a letter which read as follows:

"Reference is made to the conference held with your representative in the office of the General Counsel in support of the brief submitted by you to the Income Tax Unit relative to the refund of offers in compromise accepted in settlement of the liabilities incurred to interest accrued on the rejected portions of claims for abatement for the year 1917 tendered by the Commander Mill Company, Big Diamond Mills Company and the Empire Milling Company, Minneapolis, Minnesota.

"Due consideration has been given to the arguments presented and the cases cited by you. In accordance with the decision made by the office of the General Counsel, you are advised that there is no authority in law by which an amount tendered in compromise of interest can be refunded where, subsequent to the formal acceptance of the offer, the tax upon which interest accrued is refunded to the taxpayer."

Following the rejection of the claim for refund of the interest, the present suit was commenced.

The action is for money had and received; in form, an action at law, but governed by equitable principles; and it is the contention of appellant that it is entitled in equity, justice, and good conscience to the money involved and in appellee's possession.

It is conceded that the money involved is interest based upon a tax which was paid by appellant and which was afterward refunded by appellee as having never been due from appellant, but as having been wrongfully collected by reason of an erroneous assessment.

It would seem that under these facts, and in the absence of countervailing circumstances, if the tax itself was refunded, the interest based upon the tax should also be refunded as a matter of justice and equity; but the appellee contends that there is a conclusive countervailing circumstance, to wit, the making of the compromise agreement.

The trial court held that the compromise of the interest was valid and binding upon the parties, and could not be disturbed.

The main question involved in this appeal is whether, in view of the compromise agreement, the appellant company can recover the amount paid as interest under said compromise agreement.

■ A compromise is a contract, and, like other contracts, it requires, among other things, parties capable of making, and authorized to make, the contract, a subject-matter, and a consideration. 12 C. J. 316 et seq.; 5 R. C. L. p. 876 et seq.; Hunt on Accord & Satisfaction Compromise, p. 167; Board of Health of State of La. v. Teutonia, etc., Co., 137 La. 422, 68 So. 748, Ann. Cas. 1916B, 1251; 5 R. C. L. p. 881, § 6; Elliott on Contracts, § 235; 25 L. R. A. (N. S.) 275, note; Skinner v. Cromwell (C. C. A.) 40 F.(2d) 241, 245; City Street Improvement Co. v. Pearson, 181 Cal. 640, 185 P. 962, 20 A. L. R. 1317.

■ Compromises are favored in the law (12 C. J. p. 336, § 32; 5 R. C. L. p. 878, § 3; 25 L. R. A. [N. S.] 287, note; Daly v. Busk, etc., Ry. Co., 129 F. 513, 521 [C. C. A. 8]); but, nevertheless, the contract is subject to construction at the hands of the court as to its meaning and validity and consideration, in view of the language used, and in view of the circumstances surrounding the making of the contract. See 12 C. J. pp. 335, 367.

In the case at bar, the validity, the construction, and the consideration of the con-

tract of compromise are each the subject of controversy.

The statute relevant to the situation is section 158, title 26, USCA, which is section 3229, Rev. St., and reads as follows:

"§ 158. *Compromises*. The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced. Whenever a compromise is made in any case there shall be placed on file in the office of the commissioner the opinion of the Solicitor of Internal Revenue, or of the officer acting as such, with his reasons therefor, with a statement of the amount of tax assessed, the amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and the amount actually paid in accordance with the terms of the compromise."

Section 158 on its face indicates that the authority of the Commissioner to compromise is limited to a "civil or criminal case arising under the internal-revenue laws."

■ The record on the present appeal shows that the tax for the year 1917 and the interest thereon constituted the civil case. The interest was merely a part of the tax made so by section 14 (a) of the Revenue Act of 1916 (39 Stat. 756, 772), which remained in force under the Revenue Act of 1917 (40 Stat. 300); and by section 250(e) of the Revenue Act of 1921 (42 Stat. 227, 264, 266), being the act in effect when the interest payments were made. The liability was single. See Ely & Walker, etc., Co. v. United States, 34 F.(2d) 429 (C. C. A. 8), where the tax and a penalty were held to be a single liability. See, also, United States v. Childs, 266 U. S. 304, 45 S. Ct. 110, 69 L. Ed. 299; San Bernardino County v. So. Pac. R. R. Co., 118 U. S. 417, 6 S. Ct. 1144, 30 L. Ed. 125; C. B. 1–2, p. 220; C. B. II–2, p. 221. There being but a single liability covering the tax and the interest, it would seem to follow, first, that there is no authority in the statute for compromising the interest only, and retaining the sum offered, when the tax itself is thereafter found to be unwarranted, and is therefore refunded. No case is cited by the government to support the contention that the interest may be compromised separately. All of the cases that are cited involve both a tax and a penalty, or a tax alone, or a fine alone. The second result which would seem to follow from the holding that the tax and the interest constitute a single liability is that the compromise agreement, if on its face relating to the interest alone, must, in order to be valid under the statute, be read and considered in connection with the whole matter in controversy; that is, with the whole case and the proceedings relative to the tax, including the claim for refund filed January 17, 1924.

■ The compromise agreement, when thus read and considered in connection with all the facts relating to the controversy, carries with it the implied condition that, if the tax itself is returned as unwarranted, the interest paid under the compromise agreement will also be returned. If this were not so, the position of the government necessarily would be that it had two separate, independent claims: one for a tax; one for interest; and that the one for interest could be compromised without regard to the validity of the tax on which it was computed. Such a position is neither reasonable in itself, nor does it comport with the wording and purpose of the statute.

There is no question that the government had the power to return both the tax and the interest, if wrongfully assessed. See section 252, Revenue Act of 1921, as amended by the Act of March 4, 1923 (42 Stat. 1504); see, also, section 149, title 26, USCA; section 284, Revenue Act of 1926 (44 Stat. 9, 66), and section 1065, and note, title 26, USCA.

It would also necessarily be the position of the government that the taxpayer, while vigorously contesting the validity of the tax, was willing to concede that interest on the tax could rightfully be collected, whether the tax was valid or otherwise. We do not think such an illogical conclusion can properly be attributed to the taxpayer.

■ A further contention of the appellant company is that there was no consideration for the compromise agreement. This contention has a twofold basis:

The first is that the claim of the government that interest was properly computed at 1 per cent per month from July 6, 1918, to November 23, 1921, was without foundation in law, because section 14 (a) of the Revenue Act of 1916 (39 Stat. 772) and section 1400 (b) of the Revenue Act of 1918 (40 Stat. 1149) were superseded by sections 250 (e)

and (h) of the Revenue Act of 1921 (42 Stat. 264) and that these sections of the act of 1921 are retroactive.

An examination of the various provisions of the statutes involved has not convinced that sections 250 (e) and (h) are retroactive. The ordinary rule is that a statute is prospective in its operation unless the intention that it be retroactive is clearly expressed. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. We, accordingly, hold sections 250 (e) and (h) prospective only.

The second basis is that the demand for the tax itself was wholly without legal foundation; that, when the tax itself fell, the interest necessarily fell with it; that, accordingly, there was and could be no consideration for the compromise of a matter that had no legal foundation.

The weakness of this basis is that it assumes that, at the time the compromise offer was made, it was known that the tax itself had no legal foundation. The evidence fails to show this. The trial court found as a fact that, even when the compromise offer was accepted, it was not known that the tax itself was without legal foundation. We shall later show that this finding was not warranted. We think it equally unwarranted to hold that the evidence shows that, at the time the compromise offer was made, it was known that the tax itself was without legal foundation. We think the evidence shows that there was an honest dispute as to the validity of the tax. The result is that we cannot hold that the compromise agreement was without consideration. We do hold, however, that the compromise agreement must be construed as conditional upon the establishment of the validity of the tax itself; that otherwise the compromise agreement was invalid as unauthorized by the statute.

As above stated, the trial court, among its findings of fact, included the following:

"7. At the time the plaintiff's offer in compromise was accepted by the Commissioner [January 3, 1925] it was not known that the claim for refund filed on behalf of the plaintiff by the Commander Mill Company on January 17, 1924, would be allowed in whole or in part, or that a reaudit of the plaintiff's returns for the year 1917, as a result of the filing of said claim for refund, would result in the determination of the over-assessment and/or overpayment of the plaintiff's tax for that year, in the amount of $9,-902.24, or any other amount."

This finding is challenged as without support in the evidence. The record shows that there was an agreed statement of facts, and that no other evidence was taken. The finding in question was not included in the statement of facts, nor can it, in our opinion, be properly inferred therefrom. Where the facts are agreed upon, the trial court is not authorized to make additional findings except such as are proper inferences from the agreed facts, or such as the court may take judicial notice of. 1 R. C. L. p. 779, § 6; 38 Cyc. 1934; 1 Encyc. Pl. & Pr. 393; Binney's Lessee v. C. & O. Canal Co., 8 Pet. 214, 8 L. Ed. 921; Saltonstall v. Russell, 152 U. S. 628, 14 S. Ct. 733, 38 L. Ed. 576; Byam v. Bullard, 4 Fed. Cas. 934, No. 2262; 11 Ann. Cas. 148, note; see Federal Trade Com'n v. Cassoff (C. C. A.) 38 F.(2d) 790.

We think it was error on the part of the court to make the challenged finding.

Our conclusion is that the trial court erred in holding that the compromise agreement as to interest was unconditional, valid, and binding without regard to the legality of the tax itself; and erred in holding that appellant company was not entitled, in equity and good conscience, to recover the sum demanded.

The judgment of dismissal is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.