## LOEB v. UNITED STATES.

District Court, S. D. New York.

Oct. 19, 1936.

Engelhard, Pollak, Pitcher, Stern & Clarke, of New York City (George H. Engelhard, of New York City, of counsel), for petitioner.

Lamar Hardy, U. S. Atty., of New York City (Edward J. Ennis, Asst. U. S. Atty., and Helen E. Cottrell, Sp. Asst. U. S. Atty., both of New York City, of counsel), for the United States.

KNOX, District Judge.

This is an action at law to recover interest and penalties paid by the petitioner to the United States pursuant to a compromise agreement. The plaintiff has moved for summary judgment, and the defendant has made a cross-motion for dismissal of the complaint on the grounds that the court has no jurisdiction of the subject-matter of the action, and that, on the merits, the plaintiff is entitled to no relief.

The facts as stipulated by the parties are as follows:

On or about January 4, 1922, the Collector of Internal Revenue, Second District of New York, hereinafter called the Collector, made demand upon Carl M. Loeb, hereinafter called the petitioner, for the payment of $245,517.48, additional income taxes for 1917; alleged to be due because certain tantièmes received by the petitioner during 1917 had been included by him in his 1916 income tax return, which was the year during which the tantièmes had been earned and credited. On or about January 11, 1922, the petitioner filed a claim in abatement of the additional tax of $245,517.48. On or about April 6, 1922, the Collector made a second demand for payment of the additional tax of $245,517.-48 and also a demand for a penalty of 5 per cent. and interest at the rate of 1 per cent. per month until paid. On November 22, 1922, a warrant of distraint issued for the amount of the tax of $245,517.48, plus the 5 per cent. penalty and interest at 1 per cent. per month in the total sum of $44,-193.15. On or about May 5, 1923, the petitioner's claim in abatement was rejected and thereafter the petitioner paid the additional tax of $245,517.48. On October 25, 1923, the petitioner submitted an offer of $2,500 and a check for that amount in compromise of the 5 per cent. penalty and interest of 1 per cent. per month in the total amount of $44,193.15. The said check was deposited and collected by the Collector on October 25, 1923. On November 1, 1923, the petitioner filed a claim for refund which stated in item 6 "amount to be refunded (or such greater amount as is legally refundable) $245,517.48." This refund claim made no specific reference to the offer of.

$2,500. in compromise of the penalty and interest. A copy of the claim for refund is set forth in the margin.[1] On June 25, 1925, the Commissioner of Internal Revenue (hereinafter called the Commissioner) issued a certificate of overassessment in the amount of $213,310.70 with respect to the 1917 assessment of $469,517.03, stating that "The overassessment is due to eliminating from your net income" (for 1917) "as adjusted by the revenue agent in his report dated June 17, 1919, the amount of $359,326.73 tantièmes which has been transferred to your 1918 return." A letter dated June 26, 1926, from the Commissioner to the petitioner advised the petitioner that the offer of $2,500 in compromise was deemed insufficient. A letter of the same date from the Commissioner to the Collector advised the Collector of the rejection of the offer. On July 6, 1926, the petitioner made an additional offer of $388 in compromise of

---

[1] Treasury Department Internal Revenue Service Form 843—Jan., 1922 Comptroller General U. S. January 18, 1922

Claim for Abatement of Tax Assessed
Credit against Outstanding Assessments
Refund of Taxes Illegally Collected
Refund of Amounts Paid for Stamps used in Error or Excess

Collector's Notation
District
Account number
Date received

Important
File with Collector of Internal Revenue where assessment was made. Not acceptable unless completely filled in.

*Notice to Collector* Date Received
Collector must by Administrative Unit
indicate in block
above the kind of
claim, except in
Income Tax cases.

Stamp here
Collector of Internal Revenue

Stamp here

State of New York, } ss:
County of New York }

Carl M. Loeb
(Name of taxpayer or purchaser of stamps)

Type
or
Print

41 West 85th Street, Manhattan, New York City, New York
(Residence—give street and number as well as city, or town and State.).
61 Broadway, Manhattan, New York City, New York
(Business address.)

This deponent, being duly sworn, according to law, deposes and says that this statement is made on behalf of the taxpayer named, and that the facts given below with reference to said statement are true and complete:

Period        Year

1. Business in which engaged—President, The American Metal
Company, Limited.        From January 1, 1917
                          To December 31, 1917

2. Character of assessment or tax—Additional Income Taxes for 1917
   (State for or upon what the tax was assessed or the stamps affixed.)
3. Amount of assessment or stamps purchased                                    $245,517.48
4. Reduction of Tax Liability requested (Income and Profits Tax)               $.........
5. Amount to be abated                                                          $.........
6. Amount to be refunded (or such greater amount as is legally refundable)     $245,517.48
7. Dates of payment (see Collector's receipts or endorsements of canceled checks)
   7/12/23 $100,000; 8/20/23 $25,000; 9/21/23 $25,000; 10/24/23 $95,517.48
   (If statement covers income tax liability, items 8–11, inclusive, must be answered.)
8. District in which return (if any) was filed—Second of New York
9. District in which unpaid assessment appears—Second of New York
10. Amount of overpayment claimed as credit—                                   $245,517.48
11. Unpaid assessment against which credit is asked; period from ——— to ———. Deponent verily believes that this application should be allowed for the following reasons: As set forth in annexed affidavit, marked Exhibit "A" and made a part hereof with the same force and effect as if here set out in full.

(Attach additional sheets if necessary.)

Sworn to and subscribed before me this 1st day of November, 1923

Signed: Carl M. Loeb

[Seal] [Sgd] Simon J. Watsky
Notary Public
New York County Clerk's No. 448
New York County Reg. No. 4090 A
Commission expires March 31, 1924

(This affidavit may be sworn to before a Deputy Collector of Internal Revenue or Revenue Agent without charge.)

c2–11704

the 5 per cent. penalty and interest, and delivered to the Collector his check for said amount. A letter of November 23, 1926, from the Commissioner to the petitioner informed the petitioner that the Commissioner had decided, under date of November 15, 1926, with the advice and consent of the Secretary of the Treasury to accept the offer in compromise, and that said check for $388 had been paid. On October 14, 1927, the Board of Tax Appeals decided in Theodore Stanfield et al. v. Commissioner, 8 B.T.A. 787, that the tantièmes involved correctly were included in the petitioner's income tax return for the year in which they were earned and credited regardless of the time when they were actually paid. In or about June, 1928, the Commissioner issued a certificate of overassessment for $95,445.78 upon the determination that the amount of tax of $160,760.55 as shown by the petitioner's original return for 1917 was correct. The Commissioner refunded to the petitioner $71,375.73 interest at 6 per cent. per annum on overpayments of income tax for 1917 and 1918 including the overpayment of $245,517.48 as follows:

| | |
|---|---|
| October 25, 1925 (after the issue of the first overassessment certificate) | $25,814.50 |
| August 6, 1928 | 42,261.80 |
| October 4, 1928 | 3,299.43 |
| | $71,375.73 |

A letter of October 26, 1933, from the petitioner to the Commissioner stated that computation of the interest of $71,375.73 had failed to make allowance for the payment of the $2,888 offered in compromise of the interest and penalties for 1917, stated that "it is apparent that the aforementioned offer in compromise could only have been offered and accepted in error," stated that the petitioner did "accordingly make further claim for this refund," and stated that the petitioner requested to be advised "if it is necessary for me to file a formal claim for refund on Form 843." A copy of the letter of October 26, 1933 follows:

"October 26, 1933
"IR:C:CC:4–1B
"Commissioner of Internal Revenue,
"Treasury Dept.
"Washington, D. C.
"Dear Sir:
"I desire to acknowledge and thank you for your letter of Oct. 18th in reply to my letter to you of October 2nd relative to the computation of interest in the total amount of $71,375.73 allowed on over-payments of Income Tax for 1917 and 1918 and note from this letter that you intend to forward an additional check for $750.97 for additional interest payable.

"In comparing your computation with my records I find that you have failed to make allowance for payments to you of $2,500.00 on October 25, 1923 and an additional payment of $388.00 on December 24, 1926, a total of $2,888.00 offered to you in compromise of interest and penalties for the year 1917.

"By reason of the fact that the final determination of the U. S. Board of Tax Appeals acquiesced to by you, showed that there was no additional taxes due for the year 1917 and that in fact a refund was due me and paid, it is apparent that the aforementioned offer in compromise could only have been offered and accepted in error.

"The said sum of $2,888.00 plus accrued interest represents a further adjustment of your interest computation and I accordingly make further claim for this refund.

"Will you kindly advise me if it is necessary for me to file a formal claim for refund on Form 843 or can this matter be adjusted without such procedure, similar to the method advocated in your letter of October 18, 1933.
"Yours very truly,"

A letter of November 3, 1933, from the Commissioner to the petitioner, in reply to the letter of October 26, 1933, stated that "the offer was accepted November 15, 1926, by the Commissioner with the advice and consent of the Secretary of the Treasury. In accordance with Article 1206 of the Regulations 69, governing the Revenue Act of 1926, refund cannot be made of accepted offers in compromise in cases where it is subsequently ascertained that no violation of law was involved." A letter of November 8, 1933, from the petitioner to the Commissioner, in reply to the letter of November 3, 1933, stated that the petitioner was entitled to the relief requested in his letter of October 26, 1933, on the authority of certain court decisions cited in this letter of November 8, 1933, and requested to be advised if such relief could not be extended so that a formal claim for refund on Form 843 might be filed. A copy of the letter of November 8, 1933 follows:

970

"November 8, 1933.

"IR:C:P:1
"LHR
"Commissioner of Internal Revenue
"Treasury Department
"Washington, D. C.

"Dear·Sir:—

"I desire to acknowledge receipt of your letter of November 3rd, in reply to my letter to you of October 26th, relative to my claim for a return of the $2,888.00 paid you under Offer in Compromise of interest liability incurred on a proposed deficiency in income tax for the year 1917.

"While it is true that under the article you refer to, the regulations prescribe that amounts accepted as offers in compromise can not be refunded where it is subsequently ascertained that no violation of the law was involved, I find that the United States Circuit Court of Appeals has subsequently held that

" 'If the tax itself is returned as unwarranted, the interest paid under the compromise agreement will also be returned,' and 'Where a settlement is entered into or a compromise is made under a mutual mistake as to a material fact, relief may be had.'

"I specifically refer you to the following decisions of the United States Circuit Court of Appeals, reversing decisions of the United States District Courts which had previously ruled in your favor on similar matters:

Big Diamond Mills [Co.] v. U. S. [C. C.A.] 51 F.[2d] 721
 Commander Mill Co. v. U. S.
 Empire Milling Co. v. U. S.
 Colorado Milling & Elevator Co. v. U. S. [Howbert] [C.C.A.] 57 F.[2d] 769.

"A review of these cases will, I feel sure, satisfy you that I am entitled to the relief requested in my letter of October 26th, 1933. If such relief cannot be extended to me in the manner outlined in your letter of October 18th, will you be kind enough to advise me promptly so that I may file formal claim for refund on Form 843?

"Thanking you, I am
"Yours very truly,
"C. M. Loeb
"CML:EL"

A letter of ·November 21, 1933, from the Commissioner to the petitioner in reply to the letter of November 8, 1933, stated that the court decisions relied upon by the petitioner would not be regarded as a precedent for disposing of similar cases until a decision by the Supreme Court contrary to the Government's position. On February 13, 1934, the petition herein was filed in this court to recover the said sum of $2,-888 with interest from the date of payment.

At the outset the jurisdiction of the court must be settled. The government contends that the plaintiff's failure to file a claim for refund of the penalty precludes the plaintiff from bringing the action in this court. Rev.St. § 3226, as amended (26 U.S.C.A. §§ 1672–1673), upon which the defendant relies, reads as follows: "(a) *Limitations*—(1) Claim. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

Although Rev.St. § 3226, as amended, makes the filing of a refund claim a requisite of the · court's jurisdiction, United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025, Pacific, etc., Ins. Co. v. United States (Ct.Cl.) 44 F. (2d) 887, see Red Wing Co. v. Willcuts (C. C.A.) 15 F.(2d) 626, 49 A.L.R. 459, I am satisfied that the refund claim which was filed in 1923 meets the requirements of the statute for the purposes of the case at bar. Compare Stern v. United States (D. C.) 40 F.(2d) 971. For all practical purposes the present litigation arose out of the tax assessment which was the subject of the 1923 claim. The penalty was assessed as "part of the tax," Revenue Act of 1921, § 250(e), 42 Stat. 264, a fact which the subsequent compromise did not change, San Bernardino County v. Southern Pacific Railroad Co., 118 U.S. 417, 422, 6 S. Ct. 1144, 30 L.Ed. 125, and Camp Bird v. Howbert (C.C.A.) 262 F. 114, regardless of its effect upon the plaintiff's ability to recover the payment made pursuant to the compromise.

From the government's standpoint there is a fundamental distinction between a tax and a penalty. A tax is intended for the support of the government and the maintenance of its functions, whereas the purpose of a penalty is to curb tax delinquency. See De Treville v. Smalls, 98 U.S. 517, 527,

25 L.Ed. 174. Interest on unpaid taxes is intended to compensate the government for its inability to use its income after the tax is payable. See United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299. However, from the viewpoint of a taxpayer who pays both the tax and the penalty, imposed as part of the tax, the distinction means little. Cf. Aladdin Co. v. Woodworth (D.C.) 43 F.(2d) 150. The practical purpose of Rev.St. § 3226, as amended, which is to lay before the Commissioner in full detail the taxpayer's claim, was completely fulfilled here. Evidence of that fact is found in the ready response of the Commissioner to the plaintiff's inquiry about the payment made under the compromise.

Nor do the terms of Rev.St. § 3226, as amended, necessarily prevail against the plaintiff. The enumeration of "internal-revenue tax * * * or of any penalty * * * or of any sum" relates only to the ability of this court to consider actions for the recovery of such payments; the problem of when a claim for refund has been "duly filed with the Commissioner" is expressly left open for elaboration "according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof." No authority or elaboration directed to the problem as it affects this case has been brought to my attention, nor have I been able to find any.

Form 843, provided by the Treasury Department for refund claims, has four general categories, viz.: (1) Abatement of taxes assessed; (2) credit against outstanding assessments; (3) refund of taxes illegally collected; (4) refund of amounts paid for stamps used in error or excess. In view of the facts that the penalty is collected as part of the tax, that the basis for refund of the penalty upon an illegally collected tax is the same as the basis for return of the tax itself, and that there are no special regulations covering refunds of penalties, it is reasonable to believe that checking the third item on Form 843 covers both the tax and the penalty. Treasury Regulation 62, article 1036, which was operative at the time the 1923 claim was filed, provides that "claims by the taxpayer for the refunding of taxes and penalties erroneously or illegally collected shall be made on Form 843." This does not tell the taxpayer whether a new and separate refund claim must be filed. Furthermore, item 6 of Form 843 asks for "Amount to be refunded (or such greater amount as is legally refundable)." This clause is clearly open to the construction that it covers all assessments levied as part of the tax. See Dixie Margarine Co. v. United States (Ct. Cl.) 12 F.Supp. 543; Electric Storage Battery Co. v. McCaughn (D.C.) 54 F.(2d) 814; Woolworth Co. v. United States (D. C.) 15 F.Supp. 679, 681.

Since the penalty was levied upon a taxpayer who has been innocent throughout, and since the administrative procedure of the Bureau of Internal Revenue has disclosed to the taxpayer no special method of dealing with such cases, I feel that my doubts on the question should be resolved in favor of the taxpayer. See United States v. Memphis Cotton Oil Company, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. Accordingly, I hold that Rev.St. § 3226, as amended, does not prevent the plaintiff from suing in this court. The suit may properly be brought under the Tucker Act, Judicial Code § 24(20), 28 U.S.C.A. § 41(20).

The substantial question before the court is whether the compromise of the penalty and interest precludes recovery of the amount paid in compromise.

Revised Statutes, § 3229, as amended (26 U.S.C.A. § 1661) reads as follows: "(a) *Authorization.* The Commissioner, with the advice and consent of the Secretary, may compromise any civil or criminal case arising under the internal revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced."

At the time the compromise was effectuated, Regulations 69, article 1206, Revenue Act of 1926 read: "Amounts accepted as offers in compromise cannot be refunded." It is undoubtedly true that compromises should be encouraged, especially compromises of penalties which impose a very onerous burden on taxpayers. Ordinarily a compromise will not be set aside. A compromise may arise out of a difference of opinion as to the existence of a fact fundamental to the obligation between the parties. In such a case the failure of one party's expectations to be fulfilled would not permit a rescission of the compromise. Both parties may agree upon the existence of a fact, but may disagree upon the conclusions, e. g., the parties' obligations, to be drawn from that fact. If, however, the fact in which both parties believed turns out to be nonexistent, there has been a

mutual mistake which has the effect of making the compromise rescindable.

■ In the case at bar, if the difference of opinion had been as to the existence of the tax liability and there had been a compromise of such liability including interest and the penalty, it is clear that the taxpayer could not recover. Hord v. United States (Ct.Cl.) 59 F.(2d) 125; Ely & Walker Dry Goods Co. v. United States (C.C.A.) 34 F.(2d) 429; Backus v. United States (Ct.Cl.) 59 F.(2d) 242; Lang-Kidde Company v. United States (Ct.Cl.) 2 F. Supp. 768; Rau v. United States (C.C.A.) 260 F. 131. Similarly, if plaintiff had actually been subject to the taxes assessed upon him and there was a dispute as to the existence of liability for the penalty and interest, a compromise of said penalty and interest would not be made vulnerable by subsequent decision that the penalty and interest should not have been assessed. However, where the assumed tax liability which gave rise to the compromise of the penalty and interest turned out to be nonexistent, and the assessment was at all times in dispute, an essential factor of the compromise vanished. In misreliance on a supposed duty the taxpayer conferred upon the government a benefit to which the latter was not entitled and which it is inequitable to retain. Staten Island, etc., Co. v. United States (C.C.A.) 85 F.(2d) 68. Wheadon v. Olds, 20 Wend.(N.Y.) 174. See, also, Morgan v. United States (Ct.Cl.) 8 F.Supp. 746; Big Diamond Mills Company v. United States (C.C.A.) 51 F.(2d) 721; Colorado Milling & Elevator Company v. Howbert (C.C.A.) 57 F.(2d) 769. The penalty assessment could not exist apart from the tax assessment, especially since under the statute the penalty was part of the tax.

Plaintiff's motion is granted.