## PHELPS v. UNITED STATES.
### No. 393.

Circuit Court of Appeals, Second Circuit.
June 30, 1939.

Frank J. Albus, of Washington, D.C., for plaintiff.

James E. Murphy, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Atty., and Louis Y. Gaberman, Asst. U. S. Atty., both of Hartford, Conn., on the brief), for the United States.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by the plaintiff from a judgment of the District Court denying his claim for a recovery of an aliquot portion of deficiency interest on income taxes paid in the year 1928. The court held against recovery, on the ground that the payment had been made pursuant to a valid agreement of compromise of tax liability. Plaintiff disputes this interpretation of the compromise agreement.

The plaintiff is the sole surviving partner of Phelps Brothers & Co. In February, 1926, seven years after the partnership had gone into liquidation, the Commissioner of Internal Revenue assessed additional taxes against it for the year 1917 in the amount of $115,995.45. Delay was made in the payment of such additional taxes because the partnership was then pressing a suit to recover a judgment from the United States in another matter. This suit was settled and a payment was made by the United States to the partnership in 1928. Thereafter, on June 26, 1928, the additional assessment was paid in full, and at the same time an offer in compromise was submitted to the Commissioner. The offer recited the delinquency in payment of additional income taxes for 1917, and tendered the sum of $16,239.36 "voluntarily with request that it be accepted as a compromise offer and that release be granted the undersigned from the following lia--

bility resulting from the violation or failure specified: Interest and/or penalties for aforesaid alleged delinquency." In a statement attached, the facts regarding the additional assessment and the suit against the United States were set forth, and the refusal of the United States to pay the taxpayer's claim against it was given as the cause of the delay in payment of the assessment and as a reason for acceptance of the offer in compromise. The statement contained this further explanatory sentence: "The amount tendered in compromise of interest and/or penalties for delinquency in payment of the additional tax, is the equivalent of interest on said principal amount, at 6% per annum from February 25, 1926, to date, namely, $16,239.36." This offer of compromise was accepted by the Commissioner with the approval of the Secretary of the Treasury.

Under date of December 14, 1931, the plaintiff filed a claim for refund of the 1917 taxes in the amount of $115,995.45, "plus interest." After negotiations, the plaintiff executed a closing agreement with the Commissioner, dated June 16, 1934, in which it was agreed that the taxpayer's liability for the year 1917 amounted to $151,493.99, exclusive of any penalty or interest, and that this determination should be final and conclusive. Since the partnership had originally paid a tax of $60,498.54, this adjustment meant a tax liability of $25,000 less than had been paid. Accordingly, when this agreement had been approved by the Secretary of the Treasury, the Commissioner repaid the taxpayer $25,000, with interest thereon at 6 per cent per annum from the date of payment (June 26, 1928). The Commissioner refused, however, to pay any portion of the $16,239.36 paid on the same date in compromise of the claim for interest.

The plaintiff contends that, since he was ultimately found to have overpaid the 1917 income taxes by $25,000, he is also entitled to a return of that part of the interest payment which may be allocated to the $25,000, under the terms of the offer in compromise which, he says, related only to compromising the interest actually due, at the 6 per cent rate instead of the statutory rate of 12 per cent. The defendant, on the other hand, contends that the offer was not an offer to pay 6 instead of 12 per cent, but was a lump sum tendered in compromise of taxes, interest and penalties due. It is admitted that, in fact, no penal-

ties were due in this instance. Nevertheless, it is argued that, since interest at 12 per cent on the tax liability as finally reduced by the closing agreement would amount to more than the $16,239.36 received under the compromise agreement, the Government is entitled to retain it all.

Since no penalties were due, and since the full amount of the additional assessment was paid at the time the offer in compromise was submitted, it seems clear that the offer related only to interest. It is also clear that the sum of $16,239.36 submitted in compromise was arrived at by calculating the interest on the principal as then determined at 6 per cent, instead of 12 per cent. Under these circumstances, it seems reasonable to imply that the offer was an offer to compromise interest due at 6 per cent, and that the total amount which the Government is entitled to retain under this offer depends upon the total amount of taxes actually and ultimately due the Government for the year 1917.

Such authorities as there are agree closely with this interpretation of the contract. Big Diamond Mills Co. v. United States, 8 Cir., 51 F.2d 721; Colorado Milling & Elevator Co. v. Howbert, Collector, 10 Cir., 57 F.2d 769. In the former case, the court pointed out that the Commissioner lacks authority to compromise interest alone, so that, if valid, the compromise must relate to an entire tax liability. Accordingly, the court held that the agreement must be read in the light of all the proceedings relating to the tax, and that, when so construed, it must carry with it an implied condition to return interest as well as tax, if the latter be found not in fact due; otherwise there would be two separate liabilities, one for the interest and one for the tax. The tax liability was for the same year here involved, 1917; and the facts stated in 51 F.2d at page 722 show a suggestion from the Commissioner for such a compromise with a statement that he "has in similar cases considered an offer equal to interest at the rate of 6% per annum on the balance of tax from the due date to date of payment." In the Colorado Milling & Elevator Co. case, supra, the court reached the same conclusion with regard to a compromise offer, in which it was stated [57 F.2d 770], "That the amount of interest hereby offered in compromise represents a sum computed at the rate of ½ of one per cent. per month." We think the meaning of this statement is substan-

tially identical with that of the statement used by the plaintiff in the explanation attached to his offer, quoted above, and that the two statements should have the same effect. See, also, Brown v. United States, Ct.Cl., 14 F.Supp. 520; Loeb v. United States, D.C., 17 F.Supp. 966; Morgan v. United States, Ct.Cl., 8 F.Supp. 746; Cloister Printing Corp. v. United States, 2 Cir., 100 F.2d 355.

■■■ The obvious intent of the agreement here, made with at least the consent of the Commissioner, was to avoid the extreme statutory penalty as to interest by a payment in advance of final settlement of the tax dispute. It would be inequitable to construe that agreement as forcing a payment tending to approach that penalty.

The judgment is reversed and the case is remanded to the District Court with directions to enter judgment for the plaintiff for the amount claimed as a refund.