## SEELEY TUBE & BOX CO. v. MANNING.
### No. 9693.

United States Court of Appeals
Third Circuit.
Argued Nov. 18, 1948.
Decided Dec. 20, 1948.

Albert Freeman, of Newark, N. J. (Bilder, Bilder & Kaufman, of Newark, N. J., and George G. Tyler and William J. Nolan, Jr., both of New York City, on the brief), for appellant.

S. Dee Hanson, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson and Robert N. Anderson, Sp. Assts. to Atty. Gen., Isaiah Matlack, U. S. Atty., and Edward V. Ryan, Asst. U. S. Atty., both of Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit by a taxpayer to get back some money from the Government. The taxpayer was entitled to a refund for taxes paid in 1941.[1] It was repaid $40,384.66 and the Government kept back $4513.34 which it claimed as interest upon an alleged deficiency. The District Court denied relief to the taxpayer who, therefore, seeks help here.

The point of the case can best be understood if non-technically stated, leaving statutory references and the like for footnote elaboration. The taxpayer paid the tax it thought due for income and excess profits for 1941. Later deficiencies on both income and excess profits taxes were asserted by the Commissioner. Because the taxpayer had gone into bankruptcy the assessments were perfected in the accelerated fashion provided for in the statute.[2] Then in 1943 the taxpayer had

[1] The taxpayer's fiscal period involved here is from January 1, 1941 to September 30, 1941. It filed its tax returns and paid taxes covering this period, and it is these payments to which the carry-back provisions are applicable.

[2] Internal Revenue Code § 274, 26 U.S. C.A. § 274, provides:

"§ 274. Bankruptcy and receiverships—
(a) Immediate assessment.

"Upon the adjudication of bankruptcy of any taxpayer in any bankruptcy proceeding or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the Unit-

ed States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) determined by the Commissioner in respect of a tax imposed by this chapter upon such taxpayer shall, despite the restrictions imposed by section 272 (a) upon assessments be immediately assessed if such deficiency has not theretofore been assessed in accordance with law. In such cases the trustee in bankruptcy or receiver shall give notice in writing to the Commissioner of the adjudication of bankruptcy or

a severe operating loss. By the terms of the statute there is a carry-back provision for the operating loss and the taxpayer is entitled to credit therefor back through 1941.[3] As a result of the application of the statutory rule the alleged deficiency in the taxpayer's 1941 ·tax disappeared. Not only that, but the taxpayer became entitled to a refund on the amount it had paid for the same year. It is the difference between what it paid and what· the Government paid it back that is the subject-matter of this suit.

It is argued on behalf of the Commissioner that the money was due when the deficiency was asserted.[4] The Government is, on this argument, ·entitled to interest on the difference between what the taxpayer paid and what the Government claimed until the debt due the Government was swept away by the application of the carry-back provisions of the statute already mentioned. The taxpayer, on the other hand, says that it does not owe interest for non-payment of deficiencies in taxes which, in the light of subsequent events, have been found not to exist.

We think the argument here is overwhelmingly on the side of the taxpayer. It should be noted at the outset that the tax-

the appointment of the receiver, and the running of the statute of limitations on the making of assessments shall be suspended for the period from the date of adjudication in bankruptcy or the appointment of the receiver to a date 30 days after the date upon which the notice from the trustee or receiver is received by the Commissioner; but the suspension under this sentence shall in no case be for a period in excess of two years. Claims for the deficiency and such interest, additional amounts and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court; but no petition for any such redetermination shall be filed with the Tax Court after the adjudication of bankruptcy or the appointment of the receiver."

[3] The applicable provision of the Internal Revenue Code reads as follows:

"§ 122. Net operating loss deduction

\*     \*     \*     \*     \*     \*

"(b) Amount of carry-back and carry-over—(1) Net operating loss carry-back. If for any taxable year beginning after December 31, 1941, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed (A) with the exceptions, additions, and limitations provided in subsection (d) (1), (2), (4), and (6) and (B) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss." 26 U.S.C.A. § 122(b).

[4] The applicable sections of the Revenue Act of 1938, §§ 271, 292, 52 Stat. 534, 541, 26 U.S.C.A. §§ 271; 292, provide:

"§ 271. Definition of deficiency

"As used in this chapter in respect of a tax imposed by this title 'deficiency' means—

"(a) The amount by which the tax imposed by this title exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; or

"(b) If no amount is shown as the tax by the taxpayer upon his return, or if no return is made by the taxpayer, then the amount by which the tax exceeds the amounts previously assessed (or collected without assessment) as a deficiency; but such amounts previously assessed, or collected without assessment, shall first be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax."

"§ 292. Interest on deficiencies

"Interest upon the amount determined as a deficiency shall be assessed at the same time as the deficiency, shall be paid upon notice and demand from the collector, and shall be collected as a part of the tax, at the rate of 6 per centum per annum from the date prescribed for the payment of the tax (or, if the tax is paid in installments, from the date prescribed for the payment of the first installment) to the date the deficiency is assessed, or, in the case of a waiver under section 272 (d), to the thirtieth day after the filing of such waiver or to the date the deficiency is assessed whichever is the earlier."

payer is not claiming any interest from the United States. If it were, a different sort of problem would be presented and some of the rather elaborate argument made on behalf of the Commissioner would be in point.[5] All the taxpayer wants is to get back the money it paid the Government which is undisputedly coming to it because of the carry-back provisions. It asks, in other words, for the return of principal only.

■ Interest not contracted for by the terms of an agreement between parties is generally described as damages for the detention of money to which another is entitled.[6] The Government adopts that theory in this case. But what money was the Government entitled to here? As it turned out, taxpayer not only did not owe any money, but had money coming back to it. The only thing on which an interest claim could be predicated is the inchoate liability of the taxpayer which disappeared under the application of the carry-back provisions of the statute. We think that inchoate liability is not sufficient to call for the payment of anything but inchoate interest, whatever that may be, and so far as real money is concerned the taxpayer is entitled to get it back.

Both sides admit there is little decided case law that is very helpful. The taxpayer certainly has analogous authority in its favor in one line of cases. These decisions allowed the recovery by the taxpayer against the Government of interest paid on a tax by the taxpayer in a situation where it developed that the assessment was erroneous. The taxpayer was allowed to recover the interest he had paid in spite of a compromise agreement made with the Government at the time he paid the interest. Big Diamond Mills Co. v. United States, 8 Cir., 1931, 51 F.2d 721; Colorado Milling & Elevator Co. v. Howbert, 10 Cir., 1932, 57 F.2d 769; Phelps v. United States, 2 Cir., 1939, 105 F.2d 904. It also cites a previous ruling by the Commissioner which tends to support this point of view.[7]

The Commissioner relies heavily on Brandtjen & Kluge, Inc. v. United States, D.C.Minn.1948, 78 F.Supp. 509. This case is not exactly in point because a plaintiff was trying to get back interest and the court did not think that a refund of a tax included interest. But it is pretty close to the case before us, and the court there relied upon the instant case in the District Court for authority. The Minnesota court also pointed out that the plaintiff's argument was "appealing, forceful and persuasive of the lack of logic in the Bureau's refusal to return the interest * * *." 78 F.Supp. 509, 513.

■ After reviewing the authorities and reading the legislative history cited to us by each side we conclude to reverse. And the basis for that reversal, simply stated, is that the interest on nothing (what taxpayer owed the Government) is necessarily

[5] "It was only by reason of the permitted retrospective deduction for the taxable period * * * of the so-called 'net operating loss carry-back' from the later year, as provided by Section 122 (b) (1), that the taxpayer eventually became entitled to an abatement of the deficiency taxes. This, however, was after they had already been in existence for some considerable time, as already shown. Hence, the only amount the Commissioner was legally permitted to refund was the aggregate sum of the taxes paid, less the statutory interest on the deficiencies which had accrued between the due date of the payment of the taxes on December 15, 1941, and the date of the deficiency assessments on August 2, 1943 (Section 292 (a)), no interest being refundable except that which accrued after the refund claims were filed on March 15, 1944 (Section 3771 (e)). Consequently, the Commissioner had no alternative than to refuse to refund the interest in question. The exaction of interest from the Government requires specific statutory authority * * * and it may be computed only according to the statutory provisions in force at the time of the allowance of a refund or credit. * * *" Brief for Appellee, pp. 13–14.

[6] 15 Am.Jur., Damages § 159 (1938); Restatement, Contracts § 337 (1932).

[7] Referring to penalties and interest collected without authority, this ruling states " * * * that interest and penalties are in the nature of accretions to the tax and should be considered as a part thereof in connection with any refund or credit of the tax." I.T. 1447, I-2 C.B. 220 (1922).

nothing. Therefore, the taxpayer is entitled to his money.

The judgment will be reversed with directions to order judgment for the plaintiff.