**R. C. HOSKINS**

v.

**UNITED STATES of America.**

**Civ. A. No. 6464.**

United States District Court
E. D. Tennessee, N. D.
April 16, 1969.

Harold B. Stone, Anna F. Hinds, Stone & Bozeman, Knoxville, Tenn., for R. C. Hoskins.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for United States.

MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiff seeks refund of sums paid the Internal Revenue Service under assessments which the Government claims were due under an agreement to compromise a tax liability. Jurisdiction is derived from Title 28 U.S.C. 1346(a)(1).

In 1945 and 1946 plaintiff, R. C. Hoskins, failed to pay the proper amount of taxes. In 1955 he entered an agree-

ment with the Internal Revenue Service whereby he admitted he was liable for taxes and penalties in excess of $200,-000.00. The agreement provided that his businesses would be operated under the supervision of a Government agent. The contract listed his business assets, then provided at page two that before plaintiff could sell and transfer any business assets he would have to get permission of the Nashville Director of Internal Revenue and pay at least part of the proceeds of sale toward satisfaction of his tax debt.

During the period of Government supervision the businesses lost money. As a consequence on November 2, 1966 Hoskins and the Government agreed to compromise plaintiff's remaining tax liability of some $183,000.00. The first section of the two part agreement was entitled "offer in compromise" and provided that plaintiff should pay $75,000.-00 in six annual installments. Attached to the offer in compromise was a statement of plaintiff's net worth and a list of all his business and personal property. This statement showed that the fair market value of his equity in all property held at that time was $81,-973.42 (see affidavit and brief filed by plaintiff's counsel on February 24, 1969).

The second section of the contract, called the collateral agreement, provided in part as follows:

"The purpose of this collateral agreement . . . is to provide additional consideration for acceptance of the above-described offer in compromise. It is understood and agreed:

"That in addition to the payment of the aforesaid sum of $75,000 the taxpayer will pay out of annual income for the years 12–31–57 to 12–31–64, inclusive.

"(a) Nothing with respect to the first $5,000 of annual income.

"(b) 20% of annual income in excess of $5,000 and not in excess of $7,000.

"(c) 30% of annual income in excess of $7,000 and not in excess of $10,000.

"(d) 50% of annual income in excess of $10,000.

"That the term 'annual income' as used herein means adjusted gross income as defined in section 62 of the Internal Revenue Code of 1954, (except that in computing such 'annual income,' deductions for depreciation, depletion, and losses from sales or exchange of property shall not be allowed) plus all nontaxable earnings, profits, or gains from any source whatsoever (including the value of all gifts, bequests, devises, or inheritances) minus (a) the Federal income tax due for the year in question and paid, and (b) the payments made on the offer in compromise during the year in question."

There is no expressed limitation on plaintiff's rights to dispose of his property in the contract. Although plaintiff was married to Katherine Hoskins before any negotiations for compromise began, she did not sign the contract because the marriage date in 1949 was after Mr. Hoskins had incurred the tax liability.

In full performance of his obligation under the offer in compromise Hoskins paid a total of $87,000.00 including interest over a period of seven years. The question in this controversy is whether he fulfilled his obligations under the collateral agreement.

In conjunction with his wife and two other persons, Hoskins in 1958 incorporated and capitalized the Acme Drug Company. Plaintiff contributed $2,600.-00 for 26% of the shares and Mrs. Hoskins purchased 24%. Plaintiff testified that he purchased his share of the enterprise from that portion of his income which was left to his use under the collateral agreement. Three years later, on December 31, 1961, Hoskins made a gift to his wife of the 26% interest which he held in Acme and paid the gift tax thereon.

In 1962 Hoskins incorporated Hoskins Drug Store No. 1, in which he owned a 75% interest, and Norris Drug Store, in which he owned 100% of the shares. In December of that year he transferred without any consideration all his interests in the two businesses to Mrs. Hoskins and paid the appropriate gift tax.

Hoskins testified that he turned the stores over to his wife as he did not have time to oversee their operations, because of his state of health, and upon the advice of his accountant as a recommended estate planning device. Katherine Hoskins exercised control over the stores after the transfer and exerted substantial efforts in their operation. During the time remaining under the collateral agreement all three stores made substantial earnings.

After the transfers plaintiff reported the income from the three businesses as income of Katherine Hoskins but did not include for the years 1962–64 any earnings from them in his statements of gross income on which were figured the amounts due under the collateral agreement. The Government contended that the part of the earnings from those stores which is proportional to plaintiff's former ownership interest should be charged to his gross income for purposes of the contract. It accordingly assessed against him the following amounts:

| | |
|---|---|
| 1962 | $4,886.34 |
| 1963 | 7,781.89 |
| 1964 | 16,976.23 |

Plaintiff paid those sums and proceeded under the refund procedure to contest his liability.

■ All of the facts in this case have been stipulated or testified to without contradiction. After introduction of all the testimony and after both parties had moved for a directed verdict, it appeared that there was no question of fact for the jury. The liabilities of the respective parties depend upon the construction of the contract in light of all the circumstances, which is a question for the Court rather than for a jury. Petty v. Sloan, 197 Tenn. 630, 277 S.W.2d 355; Hibernia Bank & Trust Co. v. Boyd, 164 Tenn. 376, 48 S.W.2d 1084.

The Government insists that the collateral agreement impliedly prohibited Hoskins from transferring his income-producing property without consideration because otherwise the purpose of the agreement could readily be thwarted.

Plaintiff argues that the contract is a public contract in which nothing may pass by implication and in support of his argument relies on Volunteer Electric Cooperative v. TVA, 139 F.Supp. 22 (E.D.Tenn., S.D., 1954). Further, plaintiff insists that Hoskins' uncontradicted testimony establishes that he did not intend such an implication when he signed the agreement twelve years ago, and that an implied promise may only be found when consistent with the intent of the parties. See, E. O. Bailey & Co. v. Union Planters Title Guaranty Co., 33 Tenn.App. 439, 232 S.W.2d 309. Plaintiff relies on the rule that the inclusion of some matters of a class in a contract means the exclusion of all other matters in the same class. Aetna Life Ins. Co. of Hartford, Conn. v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595.

The parties agree that the collateral agreement is to be construed as an ordinary Tennessee contract without reference to the Internal Revenue Code. See United States v. Lane, 303 F.2d 1 (C.A.5, 1962). Because this case presents a new question, an extensive discussion of the authorities is necessary.

■ A contract in compromise of a tax liability is not such a contract for public services as was involved in Volunteer Electric Cooperative v. TVA, supra, which held that nothing can pass by implication. Rather, it has been held that a compromise agreement with relation to interest due on a disputed tax liability was subject to the implied condition that if the ultimate liability for the principal was not subsequently found, the Government must return the interest agreed upon in the compromise. Phelps v. United States, 105 F.2d 904 (C.A.2,

1939); Big Diamond Mills Co. v. United States, 51 F.2d 721 (C.A.8, 1931).

■ The contract rules followed in Tennessee permit the implication of terms in a contract. Dunlap Lumber Co. v. Nashville, C. & St. L. Ry. Co., 129 Tenn. 163, 165 S.W. 224. The rule was stated in Weatherly v. American Agricultural Chemical Co., 16 Tenn.App. 613, 65 S.W.2d 592, that a covenant may be implied when necessary to give effect to the purpose of the contract as a whole. Our Sixth Circuit has applied this rule in a case arising in Tennessee that "when the whole contract is 'instinct with an obligation,' an agreement of a party to perform may be implied." Big Cola Corporation v. World Bottling Co., 134 F.2d 718, 721.

The most recent word of the Sixth Circuit on the subject is contained in the case of United States ex rel. and for Use of TVA v. Hughes, 408 F.2d 619, April 9, 1969, as follows:

" * * * Obviously, the provision requiring removal of existing structures by necessary implication prohibits the erection later of identical or similar structures." 408 F.2d p. 621.

No case has been cited or discovered by the Court which determines whether an obligation not to give away income-producing property must be implied when as part of consideration for the compromise of a tax liability, the taxpayer agrees to pay portions of his income for subsequent years. However, closely analogous are those cases in which is implied a covenant to produce income when the consideration for a grant of property lies wholly in the payment of sums of money based on the earnings of the property transferred. Mechanical Ice Tray Corp. v. General Motors Corp., 144 F.2d 720 (C.A.2, 1944), and cases cited therein; Parev Products Co. v. I. Rokeach & Sons, 124 F.2d 147 (C.A. 2, 1941); Crossland v. Kentucky Blue Grass Seed Growers' Coop. Ass'n, 103 F.2d 565 (C.A.6, 1939) (contract for employment of a sales agent); Kentucky Rock Asphalt Co. v. Milliner, 234 Ky. 217, 27 S.W.2d 937 (lease of mineral rights).

■ Considering all the circumstances and the language of the collateral agreement and offer in compromise, the Court must construe the contract to require plaintiff not to dispose of his business property without consideration. Otherwise, plaintiff could destroy the value of the agreement by giving away all his sources of income. To the offer in compromise was attached a list of plaintiff's business and personal assets which included both the Hoskins Drug Store No. 1 and the Norris store. That it was intended and expected that the property left in Hoskins' hands would produce either income or liquidation proceeds for the Government is the only logical construction of the collateral agreement under the circumstances and when read with the offer in compromise. The Government could have taken all plaintiff's property in satisfaction of the tax liability, but the Government chose to allow plaintiff to retain it if he would pay $75,000.00 and portions of his income during the next seven years. The reason for accepting the offer (including the collateral agreement) was stated in the offer in compromise to be that selling the assets would not yield the amount tendered in settlement.

Hoskins Drug Store No. 1 and Norris Drug were owned by plaintiff at the time he entered the compromise and were listed in the schedule attached to the offer. Those properties were clearly contemplated to be the source of further consideration for the Government. However, the Acme store stands on a different footing. The Internal Revenue office left portions of plaintiff's income for his own use. At the time he paid his part of Acme's original capital in 1958, he was paying all amounts due under the agreements. Hoskins testified that he purchased the $2,600.00 interest from those sums left to him. Under the contract plaintiff could dispose in any way of that income not due the Government and that right carries with

it the right to give away the property acquired from savings that were exempt under the compromise agreement.

In summary, the Government in computing Hoskins' income under the collateral agreement may treat as belonging to plaintiff the income proportionate to his former interest in Hoskins Drug Store No. 1 and Norris Drug, but may not include any earnings of Acme after plaintiff gave the stock to Katherine Hoskins. The parties will compute the amount of the refund to plaintiff in conformity with the principles declared herein.

Brief mention should be made of plaintiff's contention that Hoskins Drug Store No. 1 and Norris Drug Store should be charged with reasonable salaries for the work done by Mrs. Hoskins during the years involved in the tax dispute. This is a matter that addresses itself to the Commissioner of Internal Revenue rather than the Court. For purposes of this suit, the Court is bound by what was done rather than what could have been done.

Present order.