## ELY & WALKER DRY GOODS CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
July 29, 1929.

No. 8100.

Henry J. Richardson, of Washington, D. C., and Thomas W. White, of St. Louis, Mo. (Samuel W. Fordyce and John H. Holliday, both of St. Louis, Mo., on the brief), for appellant.

Floyd F. Toomey, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Louis H. Breuer, U. S. Atty., of Rolla, Mo., Claude M. Crooks, Asst. U. S. Atty., of St. Louis, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for the United States.

Before LEWIS and PHILLIPS, Circuit Judges, and SANBORN, District Judge.

PHILLIPS, Circuit Judge. This is an action by Ely & Walker Dry Goods Company against the United States to recover under the provisions of title 28, § 41, subd. 20, U. S. Code (28 USCA § 41, subd. 20), the sum of $465,741.10, with interest, on account of income and profits taxes alleged to have been erroneously and illegally assessed and collected from the dry goods company for the fiscal year ending November 30, 1918. The case was tried upon an agreed statement of facts. The District Court entered judgment for the United States, and this is an appeal therefrom.

The facts are as follows:

. On June 16, 1919, the dry goods company filed its original income and profits taxes return for its fiscal year ending December 30, 1918, showing a total tax liability of $1,999,273.04. The gross income shown by such return was computed on the basis of inventories which were incorrect. Thereafter, on October 28, 1919, the dry goods company voluntarily filed an amended income and profits tax return for such year showing an additional tax liability of $340,356.02. Such additional tax resulted from the inclusion in the dry goods company's gross income of inventories omitted from the original return. On December 2, 1919, the dry goods company filed a claim for abatement in the amount of $108,161.58 of the income and profits taxes assessed against it for the fiscal year ending November 30, 1918. Thereafter, in April, 1920, an additional tax of $299,706.32 was assessed by the Commissioner of Internal Revenue, together with a penalty of $320,031.17, such penalty being 50 per cent. of the taxes assessed in addition to the taxes shown in the original return. Such additional tax resulted in part from a further correction of the dry goods company's inventories made under the direction of the internal revenue agent in charge at St. Louis. Such penalty was assessed on account of the admitted understatement of the inventories in the original return of the dry goods company.

On May 6, 1920, the dry goods company addressed a letter to the Commissioner of Internal Revenue, which read, in part as follows:

"Sir: Ely & Walker Dry Goods Co.,. a corporation within the City of St. Louis and State of Missouri, hereby offers in compromise of all civil and criminal liability of itself, its officers, directors and employees, in connection with its returns for all income, excess and war profits taxes for the fiscal year ending November 30, 1918, the sum of $32,003.12, being 5 per cent. of the deficiency in its taxes for 1918.

"It will cause to be deposited on May 7, 1920, with the Collector of the First District of Missouri, at St. Louis, the sum of $331,709.44, being the amount of the tax that re-

mains unpaid, viz., $299,706.32 and $32,003.-12, as above stated, said sum to be accepted by said Collector if this offer in compromise is accepted by the Commissioner."

The remaining portions of the letter consisted of statements refuting the claim of intentional fraud on the part of the dry goods company and were submitted as grounds for reducing the penalties.

Thereafter, and on May 7, 1920, the dry goods company delivered to the collector of internal revenue at St. Louis its check for $32,003.12, accompanied by the following letter:

"As stated in our offer in compromise of May 6th, 1920, addressed to the Commissioner of Internal Revenue, we now hand you herewith certified check for $32,003.12, which amount we tender in compromise of all liability, both Civil and Criminal, of this corporation and all of its Officers, Employés and Agents for Tax Liability arising under the Revenue Act of 1918 for our fiscal year ending November 30th, 1918."

On May 10, 1920, it delivered to the collector its check for $299,706.32, the balance due and unpaid on the deficiency taxes for the year ending November 30, 1918, exclusive of penalty. On May 27, 1920, the Commissioner of Internal Revenue was formally notified by the collector that a sum totaling $331,709.-44 had been paid to him by the dry goods company. Such "offer in compromise was accepted by the Commissioner of Internal Revenue by and with the consent of the Secretary of the Treasury on October 20, 1920." On October 27, 1920, the Commissioner of Internal Revenue directed the following communication to the dry goods company advising it of such acceptance:

"October 27, 1920.

"Ely & Walker Dry Goods Company, St. Louis, Missouri.—Gentlemen: I have considered the proposition submitted by you on May 27, 1920, through the Collector of Internal Revenue at St. Louis, Missouri, as a compromise of liabilities on account of your alleged filing of a false and fraudulent income and profits tax return for the year 1918, and have decided, with the advice and consent of the Secretary of the Treasury, to close the case by the acceptance of the following terms: $32,003.12 in compromise of all civil and criminal liability of Ely & Walker Dry Goods Company, its officers, directors, and employées, in connection with its returns for income, excess and war profits taxes for the fiscal year ended November 30, 1918."

In this letter the Commissioner made the reference, to wit, "the proposition submitted by you on May 27, 1920, through the Collector of Internal Revenue at St. Louis, Missouri," wholly because the payments were reported by the collector to the commissioner on May 27, 1920.

The sole defense set up by the government to the claim of the dry goods company was that the taxes had been compromised pursuant to section 158, title 26, U. S. C. (26 USCA § 158), which reads as follows:

"The Commissioner of Internal Revenue, with the advice and consent of the Secretary of the Treasury, may compromise any civil or criminal case arising under the internal-revenue laws instead of commencing suit thereon; and, with the advice and consent of the said Secretary and the recommendation of the Attorney General, he may compromise any such case after a suit thereon has been commenced. Whenever a compromise is made in any case there shall be placed on file in the office of the commissioner the opinion of the Solicitor of Internal Revenue, or of the officer acting as such, with his reasons therefor, with a statement of the amount of tax assessed, the amount of additional tax or penalty imposed by law in consequence of the neglect or delinquency of the person against whom the tax is assessed, and the amount actually paid in accordance with the terms of the compromise."

In the agreed statement of facts, the parties stipulated, if, upon the consideration of the special defense of compromise, the court should find that the dry goods company was entitled to recover, the amount of the judgment should be $410,185.45, with interest.

The trial court found that the dry goods company had entered into a compromise of its tax liability for the fiscal year ending November 30, 1918, and that such compromise constituted a valid defense to its action.

The contention of the dry goods company is that the compromise related solely to its civil and criminal liability for filing a false return, that the amount of penalty only was compromised, and that the additional tax was voluntarily paid.

Section 250(b) of the Revenue Act of 1918 (40 Stat. 1083), in part, provides:

"If the under statement is false or fraudulent with intent to evade the tax, then, in lieu of the penalty provided by section 3176 of the Revised Statutes, as amended, for false or fraudulent returns wilfully made, but in addition to other penalties provided by law for false or fraudulent returns, *there shall be added as part of the tax fifty per centum of the amount of the deficiency.*" (Italics ours.)

It will be noted that under this statute the

penalty is added to and becomes part of the tax.

In the instant case, the Commissioner determined that there was a normal tax deficiency of income and excess profits taxes amounting to $640,062.34, and found that the original return was false and fraudulent with intent to evade the tax. He therefore added a fraud penalty of. 50 per cent. thereof, or $320,031.17, and assessed a total tax deficiency of $960,093.51.

Under section 250(b) of the Revenue Act of 1918, this fraud penalty was added to and became an integral part of the deficiency tax. The normal tax and the penalty were constituent parts of the whole deficiency tax, which under the statute constituted a single liability and not an aggregation of separate items of liability.

When the negotiations for compromise were initiated, the Commissioner had assessed a deficiency tax of $960,093.51, and the dry goods company had paid thereon the amount of additional taxes admitted by its first amended return, or $340,356.02, leaving· a balance due of $619,737.49, according to the assessment made by the Commissioner.

Therefore when the parties undertook to agree upon a compromise they necessarily dealt not merely with what amount should be paid as penalty, but what amount of the total tax deficiency of $960,093.51 should be paid, because the government's claim constituted a single liability of the taxpayer and not several distinct items of liability, and such, in our opinion, was the intention of the. parties. The second paragraph of the letter of May 6, 1920, reads:

"It will cause to be deposited on May 7, 1920, with the Collector of the First District of Missouri, at St. Louis, the sum of $331,-709,44, being the amount of the tax that remains unpaid, viz., $299,706.32 and $32,003.-12, as above stated, said sum to be accepted by said Collector if this offer in compromise is·accepted by the Commissioner."

It will be noted that in this paragraph the dry goods company used the language "the sum of $331,709.44," and, referring thereto, further says "said sum to be accepted by said Collector if this offer in compromise is accepted by the Commissioner."

Furthermore, in its letter of May 7, 1920, in referring to the offer contained in its letter of May 6, 1920, the dry goods company used this language:

"As stated in our offer in compromise of May 6, 1920, * * * we tender in com-. promise of all liability, both civil and criminal, of this corporation * * * *for tax*

*liability arising under Revenue Act of 1918 for our fiscal year ending November 30th, 1918."* (Italics ours.)

In this letter written one day after the offer of compromise was written, at a time when no thought of a suit to recover any of these taxes assessed for the fiscal year ending November 30, 1918, was in the mind of the representative of the dry goods company, when he came to construe and restate its offer of compromise contained in the letter of May 6, 1920, he plainly said that such offer was to compromise not penalty merely, but all tax liability of the dry goods company for the fiscal year ending November 30, 1918.

While the· dry goods company, in its letter of May 6th, segregated its offer into two amounts, one the balance of the tax proper after deducting payments already made, namely, $299,706.32, and the other 5 per cent. of the additional normal taxes added by the amended returns or $32,003.12, it offered to pay and actually did pay, the total thereof, to wit, "the sum of $331,709.44" to the collector on the condition that "said sum" should be accepted by the collector if the offer in compromise was accepted by the Commissioner. No doubt the dry goods company had in mind and was seeking a reduction in the penalty assessed, and offered to· pay on the basis of the tax proper plus a penalty of 5 per cent., instead of 50 per cent., yet after segregating the items in its letter, it finally treated both taxes proper and penalty as a single liability, namely, "the sum of $331,709.44," and offered to pay that sum in compromise of its civil, criminal, and tax liability. We think it clear from the language employed that the dry goods company intended to deal with the.total tax deficiency of $960,093.51 and offered to pay in compromise of such total deficiency the sum of $331,709.44. This offer the Commissioner, with the requisite statutory approval, accepted in the terms it was made.

Counsel for the dry goods company assert that it in no wise disputed liability for the additional normal taxes and was only disputing the amount of penalty that should be assessed. They lose sight of the fact that in assessing such deficiency the Commissioner assessed a penalty which became a part of the deficiency tax and constituted one whole liability. When they admit there was a dispute as to the amount of penalty to be added, they admit there was a dispute as to the whole liability of which the penalty was an integral part.

But there was a dispute as to the tax liability considered separately and apart from the penalty. The amended return of the dry

goods company, filed in October, 1919, showed only an additional tax liability of $340,-356.02. On the 2d of December, 1919, the dry goods company filed a petition for abatement of $108,161.58 of its taxes for the fiscal year 1918. In April, 1920, the Commissioner assessed an additional tax of $299,706.32. No part of the additional tax assessed in April, 1920, had been paid when the offer in compromise was made. That offer tendered "the sum of $331,709.44, being the amount of the tax that remains unpaid, viz., $299,706.32 and $32,003.12, * * * said sum to be accepted by said Collector if this offer in compromise is accepted by the Commissioner."

The dry goods company did not admit that $299,706.32 was due and unpaid on the tax liability proper. It did not offer to pay or tender these additional taxes proper unconditionally. On the contrary, it offered to pay and tendered the full amount of the unpaid taxes proper upon the express condition that its offer in compromise should be accepted. When the offer was accepted, there was a settlement of the tax liability proper, concerning which theretofore there had been a dispute.

Counsel for the dry goods company further lay stress upon the fact that the Commissioner, in his letter of acceptance, referred only to the amount of $32,003.12. However, the stipulation is to the effect that the offer made on May 6, 1920, was duly accepted on October 20, 1920, seven days before this letter was written. Furthermore, the Commissioner's letter and the offer contained in the letter of May 6th must be read together and in the light of the payment tendered, and when so read, in our judgment, clearly evinces an intent on the part of the dry goods company and the Commissioner to compromise both the tax liability proper and penalty.

We accordingly conclude that the deficiency tax included the penalty and constituted an entire, single liability, that this single liability, treated as such by the parties, was duly compromised, and that such compromise is a bar to this action.

The judgment is affirmed.

SANBORN, District Judge (dissenting). My first impressions of this case were the same as are expressed in the majority opinion. However, upon a final analysis I have reached the conclusion that the agreement of compromise, which is the only defense which the government has against the recovery of the tax, included only the claim for penalty, and excluded the tax. No dispute existed between the parties as to the amount of the tax,

the sole dispute being as to the amount of penalty, the government claiming that the return of the dry goods company was fraudulent, and the company claiming that it was not. The company offered $32,003.12 in compromise of the claim for the penalty, and stated that it would pay the tax. The Commissioner accepted the $32,003.12 "as a compromise of liabilities on account of your alleged filing of a false and fraudulent return." A check was given for the tax, and a separate check for the penalty, and separate receipts were issued. My conclusion is that no agreement of settlement was made as to the tax; that the government was free to collect a greater amount of taxes if, under the law, a greater amount was actually due; and that the taxpayer lost no rights to recover all or any part of the tax illegally assessed. The fact that the law provided that this penalty "shall be added as a part of the tax" does not, in my opinion, change its character as a penalty (see 17 Op. Attys. Gen. 433; Thome v. Lynch [D. C.] 269 F. 995, 1001; Lipke v. Lederer, 259 U. S. 557, 561, 42 S. Ct. 549, 66 L. Ed. 1061; Helwig v. United States, 188 U. S. 605, 611, 23 S. Ct. 427, 47 L. Ed. 614), or make a compromise of the penalty a compromise of the tax, in the absence of evidence that such was the understanding and agreement of the parties. I think the decree should be reversed.