**WESTERN MARYLAND R. CO. v. TAIT, Internal Revenue Collector (two cases).**
**SAME v. UNITED STATES.**
Nos. 4172, 4174, 4469.

District Court, D. Maryland.
Oct. 20, 1931.

Eugene S. Williams, of Baltimore, Md., for plaintiff.

D. A. Taylor, Bureau of Internal Revenue, of Washington, D. C., and Simon E. Soboloff, U. S. Atty., of Baltimore, Md., for defendants.

COLEMAN, District Judge.

These are three suits brought by the Western Maryland Railway Company to recover the sum of $56,557.36 in income taxes, for the six calendar years 1920 to 1925, inclusive, which it claims were erroneously and unlawfully assessed against and collected from it. The precise question involved is whether the railway company had the right to deduct, in its income tax returns for each of these years, an amortized portion of the bond discount arising from the sale of bonds by its two predecessors in ownership of the property against which the bonds were issued.

The cases, having been consolidated, were heard together by the court upon a lengthy stipulation of facts, which narrates the complete details of two reorganizations of the railroad, one in 1908–1910; the other in 1917. Suffice it to summarize the material facts necessary to a proper understanding of the present controversy, as follows. On October 1, 1902, a first mortgage, authorizing a $50,000,000 bond issue, was placed upon the properties of the Western Maryland Railroad Company. Bonds to the extent of $42,518,000, maturing in 1952, were sold under this mortgage from year to year, at a total discount of $3,021,351.67 until 1908, when a $10,000,000 second mortgage on the railroad's property became in default; a receiver was appointed; the property was sold under foreclosure proceedings in the United States Circuit Court for the District of Maryland, and was purchased by a reorganization committee. A new company, known as The Western Maryland Railway Company, was formed, which took over the property from the reorganization com-

mittee, and began operating the same line of railroad on January 1, 1910. As of this date, it set up the face amount of the bonds already outstanding as a charge to the cost of property. No separate entry was made of the discount.

The railway company issued $10,000,000 of preferred stock to the holders of the second (foreclosed) mortgage bonds, and an additional amount of common stock to cover their unpaid interest coupons. $50,000,000 of common stock was issued, and, upon payment of $40 per share by way of assessment, the holders of the old common stock were entitled to a share for share exchange for the new common stock. The controlling stock interests remained the same, and there were only slight changes in the management of the railroad. The first mortgage of 1902 remained a first mortgage on the property in the hands of The Western Maryland Railway Company, and in 1910 and 1911, $4,-115,000 additional first mortgage bonds, still bearing the name of Western Maryland Railroad Company, were sold by the railway company. A further discount of $617,-100 was incurred in this sale of bonds. None were sold thereafter.

In 1915 and 1916, The Western Maryland Railway Company defaulted in interest upon certain secured promissory notes, and in 1917 a new corporation, which is the present plaintiff, Western Maryland Railway Company, was created by a consolidation of The Western Maryland Railway Company and seven subsidiary companies of the latter operating in both Maryland and Pennsylvania. The plaintiff issued two classes of preferred stock. Its first preferred stock discharged the lien of the defaulted promissory notes, and the second preferred stock took the place of the preferred stock of The Western Maryland Railway Company. The common stock was exchanged, share for share, for that of The Western Maryland Railway Company, without assessment. No change whatever took place in the management, and the old mortgage of 1902, with the bonds sold under it, remained a first lien on the property in the hands of the plaintiff.

The plaintiff made a contention, similar to the one now presented, before the Board of Tax Appeals with respect to its income tax returns for the years 1918 and 1919. The Board refused to permit the deduction, basing its denial primarily upon the fact that a new corporation had been created as a result of the consolidation that

took place in 1917, and that the new corporation, in taking over the property and assuming the debts of the old one, had paid no discount on the bonds, and consequently was not entitled to amortize discount. However, the Circuit Court of Appeals, on petition to review, reversed this decision of the Board of Tax Appeals, 33 F.(2d) 695. Plaintiff contends that this decision of the appellate court is res adjudicata of the present controversy for the following reasons: (1) The present suit involves the same discount upon the same bonds as did the former litigation, except for different years, which is immaterial in the application of the principle of res adjudicata; (2) the same revenue act involved in the former suit, namely, that of 1918, § 234 (a) (2), 40 Stat. 1077, is applicable to the year 1920, here involved; and the Acts of 1921, § 234 (a) (2), 42 Stat. 254, and 1924, § 234 (a) (2), 26 USCA § 986 (a) (2), which govern the remaining years here involved, are identical, on the question of amortization of discount, with the Act of 1918.

The government does not deny the correctness of these two premises. Indeed they are not controvertible. See City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202. But the government does deny that the facts, as stipulated in the present suits, justify a conclusion that it is precluded by what the Circuit Court of Appeals decided in the former case, because, as the government asserts, the issue here presented is different. In other words, it contends that the evidence submitted to the Board of Tax Appeals and to the Circuit Court of Appeals did not disclose that the bonds in question were issued by a corporation whose assets were sold, in a receivership proceeding, to a new corporation, the stockholders of which differed to a material extent from the stockholders of the insolvent corporation; that the case before the Circuit Court of Appeals presented the question of law as to whether or not a corporation, which acquired assets through the merging of several other corporations, is entitled to amortize discount arising from the issue of bonds by one or more of the merging corporations, whereas in the present proceeding the principal question to be decided is whether or not the purchaser of property at a receiver's sale is entitled to amortize discount on bonds issued by the insolvent when the purchaser assumes liability under such bonds, as part of the purchase price of the assets; a ques-

tion which the government contends was not before the Circuit Court of Appeals in the earlier case. The government admits that in the present proceeding, in so far as it relates to bonds with a face value of $4,115,-000 issued by The Western Maryland Railway Company, which for convenience we may properly call company No. 2, at a discount of $617,100, the question is the same as that presented in the earlier case; but not as to bonds with a face value of $42,-518,000 issued at a discount of $3,021,351.67, by the Western Maryland Railroad Company, for convenience called company No. 1, which subsequently became insolvent.

An examination of the record before the Circuit Court of Appeals in the earlier case, and the ratio decidendi of that court's opinion, convince us that the government's contention is untenable. It is true that, in the former litigation, the 1917 change of corporate structure, and not the change of 1908–1910, was the one which was stressed, and therefore the one primarily in issue. But the earlier reorganization was before the Board of Tax Appeals and the appellate court in the stipulation of facts and in the pleadings. This is confirmed by the following statement in the opinion of the Circuit Court of Appeals [page 696 of 33 F. (2d)], in which it is true it consolidates the bond issue of the first company, the Western Maryland Railroad Company of the total face value of $42,518,000, with the bond issue of the second company, The Western Maryland Railway Company (the immediate predecessor of the present plaintiff), of the total face value of $4,115,000, or a grand total of $46,633,000; and similarly consolidates the items of discount; but the two reorganizations were of necessity before the court: "The facts as to the bonded indebtedness and the discount are that between April, 1904, and August, 1911, the corporation which was the predecessor of the petitioner, the Western Maryland Railway Company, issued and sold $46,633,000 of first mortgage 4 per cent. bonds, dated October 1, 1902, and maturing October 1, 1952, at a discount of $3,638,451.67. This discount was set up on the books of the company as of January 1, 1910, and the annual proportion thereof, amounting to $80,796,-24, was charged off each year thereafter."

After stating [page 698 of 33 F.(2d)] that "the consolidated corporation has stepped into the place of the corporation which issued the bonds, and occupies the same relationship towards them that it oc-

cupied," the court continued, pages 698–699 of 33 F.(2d): "In the second place, we think that, irrespective of the practical identity of the old and new corporations, petitioner is entitled to the deduction claimed because of having taken over the assets and assumed the liabilities of the old corporation which was unquestionably entitled to it. Among the liabilities of the old corporation as shown by its books was the bond issue; and among its assets was the amount set up as bond discount, against which was charged each year an amortized portion thereof. In taking over the liabilities and assets, the new corporation took the place of the old as to both of these items. As has been said, bond discount is really deferred interest payable at the maturity of the bonds. When, therefore, the new corporation assumed the obligations of the old, its agreement to pay the bonds at maturity embraced necessarily the agreement to pay this deferred interest, which is included in the face of the bonds. As the new corporation is bound to pay this, there is no reason why it should not amortize it in the same way as the old corporation.

"It is argued, however, that the new corporation has agreed to pay the full face of the bonds in consideration of the assets transferred to it, and that, for this reason, it has received full consideration for them and has suffered no discount. But this by no means follows. The fact that bonds have been sold at a discount presupposes that the interest rate which they carry is less than the prevailing rate at the time of sale; and it is but fair to assume that this has been taken into account in the price paid or the terms agreed upon for the transfer of the corporate assets. The matter takes care of itself in the case of a reorganization such as this; for it is manifest that, as the discount was mirrored in the affairs of the old corporation by the fact that its actual assets were that much less than they would have been had the discount not been exacted, it is mirrored in exactly the same way when the assets pass into the hands of the reorganization. As a man cannot lift himself by his own bootstraps, so a corporation cannot, by a mere process of reorganization, increase its actual assets or wipe out the fact that it is bound to pay bond discount which is in reality deferred interest."

If the aforegoing reasoning is to be given proper interpretation, it must be taken as being just as applicable to a plurality, or series of consolidations, as it is to a single one, provided the same essential elements are always successively present; namely, acquisition by the successor corporation of the particular assets and liabilities of its predecessor. If these do exist, then the precise manner of acquisition is not, as the government contends, material. Company No. 1 was sold to company No. 2 under foreclosure proceedings, whereas company No. 2 was merged into company No. 3 by a consolidation of itself and seven of its subsidiary companies. But the original mortgage, under which all the bonds here involved had been issued, still remains a first lien on the original property, now in the hands of the plaintiff, just as it had been when the property was in the hands of the plaintiff's two predecessors.

■ Thus we must conclude that further litigation of the question here raised is precluded by the decision of the Circuit Court of Appeals, because the same material facts were before that court. In its last analysis, the government's contention but comes to this: Either that the available grounds for argument against plaintiff's contention were not made the dominant issue in the previous litigation, or that the government is now seeking to obtain, through this court, a modification of the appellate court's ruling which, of course, may only be sought by a petition for rehearing, or for a writ of certiorari to the Supreme Court, seasonably made, neither of which has been done. As was said in Grubb v. Public Utilities Commission, 281 U. S. 470, at pages 478, 479, 50 S. Ct. 374, 378, 74 L. Ed. 972: "The thing presented for adjudication in the case in the state court was the validity of the order, and it was incumbent on the appellant to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that right by piecemeal, as by presenting a part only of the available grounds and reserving others for another suit, if failing in that. Werlein v. New Orleans, 177 U. S. 390, 398 et seq., 20 S. Ct. 682, 44 L. Ed. 817; United States v. California & Oregon Land Co., 192 U. S. 355, 358, 24 S. Ct. 266, 48 L. Ed. 476.

"As the ground just described was available but not put forward the appellant must abide the rule that a judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other avail-

able matter which might have been presented to that end. Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 319, 47 S. Ct. 600, 71 L. Ed. 1069; United States v. Moser, 266 U. S. 236, 241, 45 S. Ct. 66, 69 L. Ed. 262; Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195." See, also, Southern Pacific R. Co. v. U. S., 168 U. S. 1, 18 S. Ct. 8, 42 L. Ed. 355.

The identity of the amortization of discount provision in the revenue acts here involved, with the corresponding provision in the act of 1918, has already been alluded to. Therefore, since the Circuit Court of Appeals has held the deduction permissible under the one, we must hold likewise under the others.

[3, 4] Finally, in answer to the argument that the appellate court proceeded upon the mistaken assumption that the plaintiff had actually set up upon its books the amortization of the discount, it is enough to say, (1) that such a mistake of fact, regardless of its materiality, may not now be attacked. Vinson v. Graham (C. C. A.) 44 F.(2d) 772; and (2) that bookkeeping entries cannot be permitted to control over the actual facts. Doyle v. Mitchell Brothers Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054. And so the Board of Tax Appeals has itself repeatedly held. C., R. I. & Pac. Ry. Co. v. Commissioner, 13 B. T. A. 988; Kansas City So. Rwy. Co. v. Commissioner, 16 B. T. A. 665; Terminal Railroad Association of St. Louis v. Commissioner, 17 B. T. A. 1135.

Accordingly, the verdict must be for the plaintiff in the sum of $56,557.36, together with interest at the rate of 6 per cent. per annum on each of the respective payments which comprise this total amount, from the respective date of its payment or collection for such a period as is provided in section 177 of the Judicial Code as amended (28 USCA § 284).