## WESTERN MARYLAND RY. CO. v. UNITED STATES.

### No. 5886.

District Court, D. Maryland.

May 27, 1938.

Eugene S. Williams and William C. Purnell, both of Baltimore, Md., for petitioner.

James W. Morris, Asst. Atty. Gen., J. Louis Monarch, Andrew D. Sharpe, and Arthur P. Curran, Sp. Assts. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., and G. Randolph Aiken, Asst. U. S. Atty., both of Baltimore, Md.

WILLIAM C. COLEMAN, District Judge.

The question here presented is whether a taxpayer, in the present case the Western Maryland Railway Company, having obtained a refund of taxes in a suit against the Collector of Internal Revenue, may now recover in a separate suit, brought against the United States, the amount of interest paid on such taxes, this interest having accrued by reason of the Railway Company's failure to pay the taxes at the time the Collector determined they were payable, the Railway Company, through oversight, having made no claim for this interest in its original suit against the Collector.

It is agreed that the present claim has been seasonably made and that all procedural steps in conformity with the tax statutes have been complied with, the sole question being whether the former suit is a bar to the present suit.

The material facts over which there is no dispute are as follows: On December 31st, 1930, the Railway Company instituted suit in this Court against the Collector of Internal Revenue for the District of Maryland for a refund of income taxes for the years 1923 to 1925, inclusive, and entered suit against the United States for a similar refund for the year 1920, the suits being later consolidated. The basis of the suits was the refusal of the Collector to allow a deduction which the Railway Company had made in its income tax return for the calendar year 1923 in the amount of $80,796.24, representing a part of the discount from the sale of First Mortgage bonds, apportioned to the year 1923, this discount being amortized over the life of the bonds. Such disallowance resulted in the assessment against the Railway Company of an additional or deficiency tax for the year 1923 in the amount of $45,758.60. This included an item of $10,099.53 representing the tax on the $80,796.24 just referred to. On this total deficiency tax of $45,758.60, interest in the amount of $16,524.18 was computed in accordance with the terms of Section 250 (b) of the Revenue Act of 1921 (42 Stat. 227, 264), namely, from the date the tax became due to August 6th, 1930, the date on which the Railway Company filed its waiver of restrictions relating to notice, etc., thereby consenting to an immediate deficiency assessment and preventing further accrual of interest pursuant to Section 274(d) (j) of the Revenue Act of 1926 (44 Stat. 9, 56). This interest item of $16,524.18 included an amount of $3,647.10 representing interest on the $10,099.53 which, as just explained, had been assessed on the disallowed deduction of $80,796.24, and it is this amount of $3,647.10 which is now in controversy.

In the consolidated suits for refund of taxes for the years 1923 to 1925, inclusive, and for the year 1920, this Court decided that the Collector's ruling was in error in disallowing the claimed deductions for amortized bonds. See Western Maryland R. Co. v. Tait, 53 F.2d 211. This decision was affirmed by the Circuit Court of Appeals (4 Cir., 62 F.2d 933), and by the Supreme Court (289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405), resulting in refund being awarded to the Railway Company for the full amount claimed, namely, $56,557.36. Judgment for this amount was duly entered and interest thereon allowed from the date the taxes erroneously assessed were paid, namely, December 5th, 1930, to the date of the refund, namely, August 27th, 1934, such interest amounting to $25,504.80, but, through the Railroad's over-sight, this did not include the interest amounting to $3,-647.10 which had actually been paid by the Railway Company on the deficiency assessment of $10,099.53.

The question here is essentially whether the doctrine of res judicata is applicable; that is to say, whether there is presented here a situation in which the prior judgment is to be given such conclusive effect in the present litigation as to prevent any further recovery by the Railway Company. The doctrine of res judicata is frequently subdivided into different branches, as for example, estoppel by judgment, estoppel by verdict and the rule against splitting causes of action. In the present suit the problem is twofold: First, is the present cause of action separate and distinct from the first in which judgment has been entered; and second, are the parties in the pres-

ent suit to be treated as not being the same as those in the first suit because there the Railway Company sued the Collector, whereas here the United States is the party defendant? We will consider these questions in the order in which they have been stated.

First, is the present suit based upon a cause of action separate and distinct from the cause of action in the original suit by the Railway Company against the Collector?

■ The Railway Company here contends that the two causes of action are separate and distinct, because this second suit is for interest which was never claimed or made a part of the first cause of action which was exclusively for the principal amount of the tax itself, plus interest of another type, namely, interest from the date the tax was paid until it was finally refunded, and not, as here, interest that had accrued on the tax itself during the period that elapsed between the time when it was declared payable and the time when it was in fact paid. We do not think, however, that these circumstances take the case out of the general rule that a tax and resulting interest are to be treated as constituting a single liability and thus, as one cause of action, and not merely an aggregation of separate items of indebtedness. See Nelson-Wiggen Piano Co. v. United States, 7 Cir., 84 F.2d 47, Big Diamond Mills Co. v. United States, 8 Cir., 51 F.2d 721, and Ely & Walker Dry Goods Co. v. United States, 8 Cir., 34 F.2d 429, certiorari denied 281 U.S. 755, 50 S.Ct. 409, 74 L.Ed. 1165. Suffice it to quote briefly from the first two of the aforegoing decisions, which are representative of the unanimity of authority throughout the various Circuits. In the Nelson-Wiggen Piano Company Case, the Court said (page 48):

"Under the acts of Congress mentioned, the interest and penalties are added to and become a part of the tax. They are constituent parts of one assessment, effecting a single liability, and are not merely an aggregation of separate items of indebtedness.

\* \* \* \* \* \* \* \* \* \*

"Here there was a bona fide dispute as to the validity of the assessment. This was paid, and appellant thereafter compromised the penalties and interest, a constitutent part of the tax. Since tax, penalties, and interest are one co-ordinated liability, and there can be no penalty or interest unless there is a valid tax, a compromise of such penalty and interest is an admission of valid tax assessment and, under the rules governing compromises, must be a settlement of the entire single liability. Compromises are contracts of settlement, and the compromise of one aliquot part of a single disputed liability and payment of the balance in full is a settlement of all parts of such single liability. It binds both parties and precludes suit to recover."

In the Big Diamond Mills Company Case, the Court said (page 725): "The record on the present appeal shows that the tax for the year 1917 and the interest thereon constituted the civil case. The interest was merely a part of the tax made so by section 14(a) of the Revenue Act of 1916 (39 Stat. 756, 772), which remained in force under the Revenue Act of 1917 (40 Stat. 300); and by section 250 (e) of the Revenue Act of 1921 (42 Stat. 227, 264, 266), being the act in effect when the interest payments were made. The liability was single."

■ It is fundamental that a single cause of action may not be split up and brought piece-meal, because, otherwise, litigation might be rendered interminable. See Stark v. Starr, 94 U.S. 477, 24 L.Ed. 276; Baltimor Steamship Company v. Phillips, 274 U. S. 316, 47 S.Ct. 600, 71 L.Ed. 1069; Freeman on Judgments, 5th Ed. § 596. This doctrine is equally applicable to tax cases. Guettel v. United States, 8 Cir., 95 F.2d 229; International Curtis Marine Turbine Co. v. United States, Ct.Cl., 56 F.2d 708. When the original suit was brought by the Railway Company, the present claim for interest might well have been presented at that time, since the right to recover the interest here in controversy obviously depended upon the right to recover the tax itself. Had a claim then been made, this Court could, and undoubtedly would, have entered judgment for this interest, as part of the complete refund to which the Railway Company would have been found to be entitled. See Camp Bird v. Howbert, 8 Cir., 262 F. 114, certiorari denied 252 U.S. 579, 40 S.Ct. 344, 64 L.Ed. 725.

■ It is equally well settled that a decision in one case upon issues presented is a bar, with respect to all matters and items that could have been raised and presented for decision in such case, in a suit with the same subject-matter, subsequently brought against the same party or parties or those in privity therewith. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Bates v. Bodie, 245 U.S. 520, 38 S.Ct. 182, 62 L.Ed.

444, L.R.A.1918C, 355; Grubb v. Public Utilities Comm., 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972. This doctrine, likewise, is applicable to tax cases. See Guettel v. United States; International Curtis Marine Turbine Co. v. United States, supra.

■■ It is true, the tax imposed on the plaintiff under the Revenue Act of 1921, 42 Stat. 227, and recovered in the prior suit, was imposed by section 230 of that Act, while the deficiency interest collected thereon, and here sought to be recovered, was imposed by section 250(b), and is not a penalty. 42 Stat. 252, 264. See Union Pacific R. Co. v. Bowers, D.C., 21 F.2d 856, affirmed 2 Cir., 24 F.2d 788, certiorari denied 278 U. S. 601, 49 S.Ct. 9, 73 L.Ed. 530. It is also true that the purpose of the tax is to support the Government, whereas the theory upon which interest is collected is to compensate the Government for deprivation of the use of the money from the time the tax is payable, as well as to curb, or discourage tax delinquency. However, as has just been explained, the tax and the resulting interest constitute a single liability, are not merely an aggregation of separate items of indebtedness, and, therefore, constitute but one cause of action. Even if the interest here sought to be recovered could be treated as a penalty, such should make no difference in result. See Ely & Walker Dry Goods Co. v. United States, supra.

We are thus brought to a consideration of the second phase of the case or, in other words, the second ground urged by the Railway Company as entitling it to bring the present suit, namely, that even though the cause of action be treated as the same in both suits, the parties defendant are different, in that the first suit was against the Collector whereas the present suit is against the United States. Or, stated in a still different way, this second question is: Has the Railway Company two remedies which are to be treated as separate and concurrent, provided, of course, resort to both of them does not result in double or over-payment of the debt as a whole?

■ For the purpose of making the prior judgment conclusive, it is not essential that the parties be actually identical in both cases, provided a party in the one suit is in privity with the corresponding party in the other. Therefore, the question arises as to the proper treatment of the relationship, in federal tax cases, between the three possible parties that may be involved on the Government side, namely, (1) the United States, (2) the Commissioner of Internal Revenue, or (3) one of his subordinates, a local Collector. Since there are these three possible parties, there are six possible combinations in which an adjudication involving one may be pleaded as res judicata in a subsequent suit against another.

The original suit in this Court, out of which the present controversy has grown, was against the Collector. The Commissioner of Internal Revenue and the Board of Tax Appeals had previously denied the Railway Company the right to deduct from gross income for the years 1918 and 1919 an amortized portion of the discount on sales of bonds by its predecessors, but the Circuit Court of Appeals reversed this ruling. Western Maryland R. Co. v. Com'r, 4 Cir., 33 F.2d 695. Thereafter, this Court decided that the judgment rendered, as a result of this decision of the Circuit Court of Appeals, was res judicata in a suit by the Railway Company against the Collector and the United States respecting the former's right to make similar deductions for subsequent years under the same statutory provisions and Treasury Regulations. Both the Circuit Court of Appeals and the Supreme Court affirmed. Tait v. Western Maryland Railway Co., 4 Cir., 62 F.2d 933; Id., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405. Thus it will be seen that the principle of res judicata was held to control in two among a possible six different combinations, namely, where the Commissioner was a party to the first action and the second is against the United States or the Collector.

The same result has been reached in this and other Circuits where the United States was a party to the first action, and the subsequent suit is against the Collector. See Hilton Lumber Co. v. Grissom, 4 Cir., 70 F. 2d 892, certiorari denied 293 U.S. 613, 55 S.Ct. 143, 79 L.Ed. 702; Second National Bank of Saginaw v. Woodworth, 6 Cir., 66 F.2d 170; Bertelsen v. White, 1 Cir., 65 F. 2d 719. And, likewise, where the second suit was against the Commissioner. Garcin v. Commissioner, 4 Cir., 79 F.2d 993; Id., 22 B.T.A. 1027.

There remain two possible situations to be considered, namely, (1) where the Collector was a party to the first action, and the subsequent suit is against the United States, and (2) where the Collector was a party to the first action, and the subsequent suit is against the Commissioner. The first of these situations is the one presented by the present suit, and was also presented to

the Supreme Court in the case of Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828, a decision rendered in 1919. There it was held that a suit against a Collector of Internal Revenue for refund of taxes is personal; that, therefore, the United States is not privy to a judgment obtained in such suit, and so a recovery of part of the taxes in a suit for the whole against a Collector, and satisfaction of the judgment by the United States, does not bar a subsequent suit in the Court of Claims against the United States for the remainder. Justice Holmes, rendering the opinion of the Court, said pages 36, 38, 39 S.Ct. page 416: "The former judgment is not a bar. It is true that the statutes modify the common law liability for money wrongfully collected by duress so far as to require a preliminary appeal to the Commissioner of Internal Revenue before bringing a suit. Rev.St., § 3226 [26 U.S.C.A. §§ 1672-1673]. It is true also that it is the duty of the District Attorney to appear for the collector in such suits, Rev.St., § 771 [28 U.S.C.A. § 485]; that the judgment is to be paid by the United States and the collector is exempted from execution if a certificate is granted by the Court that there was probable cause for his act. Rev.St. § 989 [28 U.S.C.A. § 842]; and that there was a permanent appropriation for the refunding of taxes illegally collected. Rev.St., § 3689(17) [31 U.S.C.A. § 711]. No doubt too, if it appeared in a suit against a collector who had acted with probable cause and had turned over his money to the United States, that a part of the tax properly was due to the United States, unnecessary formalities might be omitted and the sum properly due might be retained. Of course, the United States in such a case could not require a second payment of that sum. Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573 [2 A.L. R. 1601]. But no one could contend that technically a judgment of a District Court in a suit against a collector was a judgment against or in favor of the United States. It is hard to say that the United States is privy to such a judgment or that it would be bound by it if a suit were brought in the Court of Claims. The suit is personal and its incidents, such as the nature of the defenses open and the allowance of interest, are different. It does not concern property in which the United States asserts an interest on its own behalf or as trustee, as in Minnesota v. Hitchcock, 185 U.S. 373, 388, 22 S.Ct. 650, 46 L.Ed. 954. At the time the judgment is entered the United States is a stranger. Subsequently the discretionary action of officials may, or it may not, give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself. United States v. Frerichs, 124 U.S. 315, 8 S.Ct. 514, 31 L. Ed. 471. But perhaps it would be enough to say that if the judgment otherwise were a bar the bar would be removed by the subsequent enactment of the Act of July 27, 1912, c. 256, 37 Stat. 240, upon which, as well as the Act of 1902, this claim is based."

Likewise, in Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 53 S.Ct. 150, 77 L.Ed. 325, a decision rendered in 1932, the Supreme Court held, in considering the remaining possible combination of parties above referred to, that the prior judgment in a suit against a Collector is not res judicata in a subsequent suit against the Commissioner of Internal Revenue. There the Court said (pages 311, 312, 53 S.Ct. page 151), citing, among other cases, as will be seen, Sage v. United States: "In a suit brought by the petitioner in the District Court for Northern West Virginia, Bankers' Pocahontas Coal Co. v. White, Collector of Internal Revenue, with respect to taxes for the years 1914 to 1919, it was held that petitioner was entitled to a depletion allowance on royalties received from the leases involved in the present suit, of 5 cents per ton of coal mined. It is insisted that the decision in that case was res adjudicata of that issue, and that, in fixing the depletion allowance of the present case at 3.6 cents per ton, the court below and the Board of Tax Appeals erroneously refused to follow the decision of the District Court in the earlier case. With respect to this contention it is sufficient to say that the suit in the District Court was not against the Commissioner of Internal Revenue, the respondent here, but against the collector, judgment against whom is not res adjudicata against the Commissioner or the United States. Graham & Foster v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415; Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828; see Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; compare Union Trust Co. v. Wardell, 258 U.S. 537, 42 S.Ct. 393, 66 L. Ed. 753."

Were these decisions declaratory of the latest expression of the Supreme Court on this phase of the present controversy, this

Court would have no discretion in the matter, but would be required to follow them, with the result that it would have to say that the prior litigation is not a bar to the present suit. However, in 1933, in the case of Moore Ice Cream Co. v. Rose, Collector, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265, the Supreme Court definitely held that where a Collector acts pursuant to an assessment (as would invariably appear to be the case), and is sued by the taxpayer who is entitled, if judgment be rendered against him, to a certificate of the Court showing that he so acted, and is thereby relieved of liability to execution and the judgment is payable from the Treasury of the United States, the suit becomes a suit against the United States. The language of the Court, in an opinion by Justice Cardozo, is as follows, pages 381, 382, 383, 53 S.Ct. page 623:

"The effect of the certificate, when given, is to convert the suit against the collector into a suit against the government. United States v. Sherman, supra [98 U.S. 565, 25 L.Ed. 235].

\* \* \* \* \* \* \* \* \* \*

"A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. The Collector, supra, page 731 of 5 Wall., 18 L.Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now. United States v. Emery, supra [237 U.S. 28, 35 S. Ct. 499, 59 L.Ed. 825]; Ex parte Bakelite Corporation, 279 U.S. 438, 452, 49 S.Ct. 411, 73 L.Ed. 789; Act of February 24, 1855, c. 122, 10 Stat. 612, §§ 1 and 9; Judicial Code, § 145; 28 U.S.C. § 250 (28 U.S.C.A. § 250); Judicial Code, § 24(20), 28 U.S.C., § 41(20), 28 U.S.C.A. § 41(20). They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court."

It would thus appear that regardless of the state of the law prior to the decision in George Moore Ice Cream Co. v. Rose, supra, it is clear that now the Collector and the United States are to be treated as one and the same defendant. It is worthy of note that that decision was rendered on May 8th, 1933, twenty-one days prior to the date of the Supreme Court's decision in Tait v. Western Maryland Railway Co., which resulted in affirmance of the prior judgment with which we are here concerned. It is even more noteworthy that, in the latter case, no mention is made of the decision in Moore Ice Cream Co. v. Rose. Indeed the theory of the liability of the Collector being personal is there reiterated, and the decisions in Sage v. United States and Bankers' Pocahontas Coal Co. v. Burnet, supra, are relied upon, but the Court concludes with this language, page 627, 53 S.Ct. page 708: "We think, however, that where a question has been adjudged as between a taxpayer and the government or its official agent, the Commissioner, the Collector, being an official inferior in authority, and acting under them, is in such privity with them that he is estopped by the judgment. See Second National Bank of Saginaw v. Woodworth (D.C.) 54 F.2d 672; Bertelsen v. White, (D.C.) 58 F.2d 792." Also, an excellent discussion of this question with an incisive review of the authorities by Erwin N. Griswold entitled "Res Judicata in Federal Tax Cases," 46 Yale Law Journal, 1320, 1340–1347.

It is true that in Moore Ice Cream Co. v. Rose, no question of res judicata, that is, the effect of a prior judgment, was involved, the only questions at issue being, first, whether payment of the taxes sought to be recovered had been made without protest, and, second, whether the original claim for refund filed with the Commissioner was defective and whether amendment of it had been too late. The District Court sustained a demurrer by the Collector on both of these grounds. The Circuit Court of Appeals (5 Cir., 61 F.2d 605) upheld the lower Court's decision upon the second ground without passing upon the first, and the Supreme Court, on certiorari, 289 U.S. 714, 53 S.Ct. 522, 77 L.Ed. 1467, reversed the Circuit Court of Appeals, holding that the claim had been properly amended. But, clearly, the expressions of the Court with respect to the effect of the suit against the Collector are part of the ratio decidendi. Even if they be treated as dicta, their effect upon this Court is no different, because whatever the Supreme Court declares is binding upon

560

this Court, unless and until changed by subsequent pronouncement of the Supreme Court. For the same reason, it would be idle to inquire whether what was said by the Supreme Court in Sage v. United States, supra, was no more than a dictum and, therefore, not properly to be considered as having been overruled by Moore Ice Cream Co. v. Rose, since the former case is not referred to in the latter, although, as we have seen, it is cited in Tait v. Western Maryland Railway Co., supra.

That the expressions used in the Sage Case are no longer applicable to the present situation is confirmed by the fact that the decision of the Sixth Circuit Court of Appeals in Second National Bank v. Woodworth, supra, wherein a judgment in favor of the United States was held conclusive in a subsequent suit against a Collector, the Court declaring that the Moore Case made the Sage Case inapplicable, was cited with approval by the Supreme Court in Tait v. Western Maryland Railway Co., supra. The Circuit Court of Appeals used the following language, page 171: "The appellant contends that even though the proceedings in the two Court of Claims cases are binding upon it as an adjudication of its claim against the United States, the present action is a suit against the collector in his personal capacity, and as to him there has been no adjudication because he was a stranger to the former proceedings, and a judgment against him would be a personal judgment for which the government of the United States would not be bound. It is said that this question is controlled by Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828. Without referring to the differences noted by the trial judge between that case and the case here presented, it is sufficient to say that the question is ruled by the recent decision of the Supreme Court in George Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265. The statute provides alternative conditions upon which a collector who has been sued for a tax may be indemnified by the government. One is upon certification by the District Court 'that there was probable cause for the act done by the collector,' and the other upon certification by the court that the Collector 'acted under the directions of the Secretary of the Treasury, or other proper officer of the Government.' 28 U.S.C.A. § 842. In the Sage Case it could not be determined until after judgment whether or not the District Court would certify that there was probable cause for the collector's act. The

issuing of a certificate in that case involved 'a certain latitude of judgment.' In the case at bar, appellant's exhibit A, which was made a part of his declaration, states that the additional tax was assessed by the Commissioner of Internal Revenue. This was admitted by the answer. It thus appears from the pleadings that the tax was exacted by the collector under the directions of the Commissioner, 'a proper officer of the Government.' In such case the court has no discretion, and the collector 'is entitled as of right to a certificate converting the suit against him into one against the Government.' Since therefore this suit was brought against the collector as 'a remedial expedient for bringing the Government into court,' its status, for the purpose of determining whether it may be prosecuted, is that of a suit against the United States, and it is accordingly barred by the proceedings instituted and prosecuted in the Court of Claims."

As a result of the first suit brought in this Court which was against the Collector, a certificate of probable cause was issued, and applying the language of the Moore Ice Cream Co. Case, "the effect of the certificate, when given, is to convert the suit against the Collector into a suit against the Government." Therefore, as the plaintiff Railway Company failed in its first suit to allege a claim for the full amount which it might have been entitled to recover, and since that suit was converted into one against the United States, the plaintiff Railway Company may not now return to this Court and claim the balance in a second suit against the United States. If permitted to do so, we would be departing from (1) the established doctrine prohibiting the splitting of causes of action, and (2) the doctrine of res judicata as applied to cases involving tax claims.

Plaintiff also relies upon the language of section 284(a) of the Revenue Act of 1926, 44 Stat. 9, 66, as a further argument to support its claim. The pertinent provisions of that section are: "Where there has been an overpayment of any income, war-profits, or excess-profits tax imposed by * * * the Revenue Act of 1921 * * * the amount of such overpayment shall, except as provided in subdivision (d), be credited against any income, war-profits, or excess-profits tax or installment thereof then due from the taxpayer, *and any balance of such excess shall be refunded immediately to the taxpayer.*" (Italics supplied.)

It is to be noted that it was not necessary for the plaintiff to refer to the Revenue Act of 1926, because substantially identical language is found in section 252 of the Revenue Act of 1921, 42 Stat. 227, 268, 1504; 43 Stat. 22, which refers to the same Revenue Acts, that had previously been enacted, as are designated in the Act of 1926. In fact, the very language which the plaintiff relies on is found in the Revenue Act of 1936, § 322, 26 U.S.C.A. § 322, now in effect. Furthermore, the same language is found in the Revenue Acts of 1918, § 252, 40 Stat. 1085; 1924, § 281, 43 Stat. 301; 1928, § 322, 26 U.S.C.A. § 322; 1932, § 322, 26 U.S.C.A. § 322; and 1934, § 322, 26 U.S.C.A. § 322, as well as in the Acts of 1921, 1926 and 1936.

It is plaintiff's contention that because of this statutory provision, it is the duty of the Commissioner to make the refund, because there is an admitted overpayment, and under the terms of the statute, when such an overpayment has been determined, it shall be first applied to any tax then due from the taxpayer, and the balance "refunded immediately to the taxpayer."

We conclude that this is a strained and improper construction of the statute. The Revenue Act of 1918, section 252, 40 Stat. 1057, 1085, was apparently the first statute embodying this language, and its real purpose becomes clear upon examination of certain authorities construing it.

In the case of Fox v. Edwards, 287 F. 669, the Second Circuit Court of Appeals, in speaking of this section 252 of the Act of 1918, said (pages 672, 673): "The section is intended to give the Commissioner of Internal Revenue power to credit or refund overpayments when no claim for a refund is filed by the taxpayer. Prior to that enactment the Commissioner had no authority to credit or refund overpayments of taxes, unless appeal was duly made to him in the manner prescribed by section 3220 of the Revised Statutes. [26 U.S.C.A. §§ 1670(a) (1), (b), 1676]. * * *

"And the appeal had to be made within two years after the cause of action accrued, as required by section 3228. That being the condition of the law, Congress enacted section 252 of the act of 1918. The primary purpose of that enactment was to permit the Commissioner of his own volition, upon discovery of any overpayment, to credit or refund the same, notwithstanding the provisions of section 3228 of the Revised Statutes [26 U.S.C.A. § 1433], and to limit the time within which he could make such credit or refund to 'five years from the date the return was made.' The section does not in express terms purport to give the taxpayer a right to sue for the recovery of the excess in the tax paid. It simply defines the powers and duties of the Commissioner in correcting overpayments which he finds have been made. It was intended to protect the Commissioner in making refunds which ought to be made, even though no claim for refund was filed, or though the two-year period for filing claims prescribed by section 3228 had expired." Concluding its opinion, the court says (page 674): "In our opinion, section 252 of the act of 1918 was apparently designed to counteract the effect of section 3228 of the Revised Statutes, which limited refunds to a period of two years after the tax had been paid, and it relates to the matter of obtaining a credit or a refund from the Commissioner. If it impliedly gives a cause of action, about which we are not now called upon to express an opinion, it is a cause of action against the United States. It does not confer a right to bring an action against the collector in cases in which no liability otherwise existed."

Likewise, in Holmes, Federal Taxes, 6th Ed., § 909, in reference to this same section of the act of 1918, it is said, relying upon Treasury Department rulings: "Prior to the passage of the 1918 act, the fact that a taxpayer had overpaid his taxes for a previous year could have no effect upon the amount of taxes for which he was liable for a different year. Consequently, when such conditions existed, the only course which the government could pursue was to collect the present amount in full and permit the taxpayer to file a claim for refund of any amount overpaid. Congress, recognizing the injustice and hardship frequently involved in such an awkward procedure, provided for the first time in the 1918 act for crediting the amount of an overpayment against taxes presently due." Similarly, in speaking of section 281(a) of the act of 1924, corresponding to section 252 of the 1918 and 1921 acts, the author further states (sec. 909): "Under it taxes erroneously collected may be credited against taxes due, whether or not the taxpayer makes a claim for the credit, and the balance of the excessive amount so erroneously collected over and above the amount so credited may be refunded, whether or not a claim for the same is made."

The difference in the wording between the 1918 and 1921 acts and the subsequent acts is not material, the changed wording in the later statutes being more indicative of the legislative intent, see Blair v. United States, 55 App.D.C., 359, 6 F.2d 484, or for the purpose merely of changing the statutory period of limitation. See American Hide & Leather Co. v. United States, 284 U.S. 343, 52 S.Ct. 154, 76 L.Ed. 331.

 It is believed, therefore, that the purpose of this section in the statute was as above set forth, and not for the purpose of depriving the government of any lawful defenses to which it might be entitled, in a controversy as to whether an overpayment, though admitted, was, at the particular time, legally due and owing to the taxpayer, and whether a suit for the enforcement thereof could be maintained. This view is substantiated by the cases of Guettel v. United States, and International Curtis Marine Co. v. United States, supra, in which there was no dispute as to the overpayment, the only dispute being as to whether or not the taxpayer had defeated his right to recover the overpayment by a prior judgment in his favor in a suit involving taxes for the same taxable year. The taxes sought to be recovered in those cases were imposed by statutes embracing the provision on which the plaintiff here relies, and had the construction there been placed on this provision which the plaintiff now urges upon us, an opposite conclusion would, of necessity, have been reached in those cases. Finally, it seems clear that even if it be assumed that plaintiff has a remedy under the particulai statute, that remedy would be exclusively by mandamus. See Blair v. United States, supra.

The situation here presented is not analogous to that which we find in such cases as Loeb v. United States, D.C., 17 F.Supp. 966, because there the question was as to the effect of a compromise, entered into upon a mutual mistake of fact, upon a taxpayer's subsequent suit, and did not involve the doctrine of res judicata. It is true that in both types of cases the taxpayer has conferred upon the Government a benefit to which the latter was never entitled and which, therefore, prima facie it is inequitable for it to retain.

Were we permitted to moralize upon the present state of facts, of course there is nothing to justify the retention by the Government of the money now claimed by the plaintiff. The inequity of such retention is the greater because the money does not represent a mere book-keeping assessment of interest withheld on the theory that had the taxpayer paid a particular tax when due, the Government would not have been deprived of the use, that is, of the earning power to be derived from such payment; but it is money actually taken from the pocket of the taxpayer in the form of accrued interest on sums which the Government has been required to return. There is no statute of limitations involved here, nor is the present situation really akin to one where such a bar arises, other than for the fact that both defenses are technical, both are recognized in the law, which inevitably works some hardship in individual cases. However, abstract moralization is not a function of the courts, and since for the aforegoing reasons plaintiff's remedy is believed to be barred in law, the verdict must be for the Government, and entry of judgment thereon is hereby directed.